OHIO DENTAL HYGIENISTS ASSOCIATION ET AL., APPELLANTS, *v.*
OHIO STATE DENTAL BOARD, APPELLEE, ET AL.

[Cite as Ohio Dental Hygienists Assn. *v.* Ohio State Dental Bd. (1986),
21 Ohio St. 3d 21.]

(No. 85-151—Decided January 2, 1986.)

22

*McFadden & Sponseller, Mary J. McFadden* and *Melodee S. Kornacker,* for appellants.

*Anthony J. Celebrezze, Jr.,* attorney general, and *B. Douglas Anderson,* for appellee.

*Philip R. Bradley,* urging affirmance for *amici curiae,* Ohio Association of Orthodontists et al.

DOUGLAS, J. The issue raised by this case is whether a letter issued by the Ohio State Dental Board advising dentists that BQP may remove cement, debris and loose bands from a patient's teeth violates R.C. 4715.39.

Appellee argues that the letter of February 19, 1982 is merely an advisory opinion, offering the board's interpretation of the meaning of rules already adopted by the board. Specifically, it is appellee's contention that the board's letter is not a "rule" requiring promulgation but a statement of clarification regarding Ohio Adm. Code 4715-11-01 through 4715-11-03, 4715-3-01 and 4715-9-01. This court does not agree.

By enacting R.C. 4715.39, the Ohio General Assembly sought to protect dental consumers from permanent harm caused by untrained and unskilled individuals. The performance of dental procedures which involve the risk of irremediable injury are limited to licensed dentists and hygienists. Although auxiliary personnel may assist dentists with certain basic tasks, the legislature has limited their use to procedures where the risk of harm will be minimal. Recognizing the temptation to maximize the use of lower-paid auxiliaries, the General Assembly limited the board's authority to expand their duties. Specifically, the board was not granted informal administrative power to prescribe tasks for auxiliaries, but could do so only by formal, reviewable rule-making. As a matter of public health, it is imperative that the protective regulatory efforts of the General Assembly be sustained. It follows, then, that R.C. 4715.39 must be construed to give effect to legislative intent.

Absent ambiguity, a statute is to be construed without resort to a process of statutory construction. As this court stated in paragraph five of the syllabus of *Sears* v. *Weimer* (1944), 143 Ohio St. 312 [28 O.O. 270]:

"Where the language of a statute is plain and unambiguous and conveys a clear and definite meaning there is no occasion for resorting to rules of statutory interpretation. An unambiguous statute is to be applied, not interpreted."

R.C. 4715.39 provided, at the time relevant herein, in pertinent part:

"Subject to the rules of the state dental board, licensed dentists may assign to qualified personnel such dental procedures that do not require the professional competence or skill of the licensed dentist or dental hygienist as the board *by rule* authorizes such personnel to perform. * * *" (Emphasis added.)

The meaning of this provision is clear. Unlicensed personnel may not be assigned *any* dental procedure without an authorizing board rule. The trial court was correct in ruling:

"Clearly, the legislature intended that the delegation of procedures not specifically authorized be prohibited. The opposite conclusion, advanced by defendants, that what is not specifically prohibited must be allowed, violates the express legislative intentions found in Section 4715.39. * * *"[4]

The appellee argues that in conformity with R.C. 4715.39, it has already adopted rules which authorize the challenged procedures. Appellee refers the court to Ohio Adm. Code 4715-11-01 and 4715-3-01. The first rule provides:

"Basic qualified personnel—functions

"A licensed dentist may, *in accordance with board rules,* assign under his direct supervision and full responsibility basic remediable intra-oral dental tasks and/or procedures to basic qualified personnel." (Emphasis added.)

By itself, this rule does little to assist dentists in determining what procedures to delegate to their BQP. Rather it apparently refers them to some other rule(s). Turning then to the second rule, Ohio Adm. Code 4715-3-01 sets forth as a definition, those tasks that are delegable. Ohio Adm. Code 4715-3-01(E) provides:

" 'Basic remediable intra-oral dental tasks and/or procedures'—Basic remediable intra-oral dental tasks and/or procedures are defined as those which do not create irreparable changes within the oral cavity or the contiguous structures. Basic remediable intra-oral dental tasks and/or procedures include the exposure of dental radiographs but do not include any advanced remediable intra-oral tasks and/or procedures as defined by these rules."

The only task specifically mentioned in this rule is the exposure of dental radiographs. In fact, this definition is little more than a repetition of R.C. 4715.39 which in part specifies what BQP may *not* do. R.C. 4715.39, in part, reads:

"Nothing in this section shall be construed by rule * * * or otherwise

---

[4] It should be noted that effective March 15, 1982, R.C. 4715.39 was amended as follows:

*"The state dental board may adopt rules, in accordance with Chapter 119. of the Revised Code, defining duties which may be performed by qualified personnel,* and may adopt rules establishing training and practice standards for qualified personnel; such standards may include examination and issuance of a certificate." (Emphasis added.)

to authorize [basic] 'qualified personnel' * * * to perform * * * [an] intraoral procedure that contributes to or results in an irremediable alteration of the oral anatomy * * *.''

By including the words "[s]ubject to the rules of the * * * board," the legislators must certainly have meant for dentists to be guided by rules more specific than those included in the statute. As a mere affirmative restatement of an R.C. 4715.39 prohibition, Ohio Adm. Code 4715-3-01(E) is insufficient to allow procedures other than the one specifically mentioned. It is the duty of the board to provide specific guidance to Ohio dentists through the enactment of rules pursuant to R.C. Chapter 119. If the board wished to authorize BQP to remove cement, loose bands or debris, it must do so by an appropriate, formal rule.

In addition, the trial court found that the language of the letter was so broad that it allowed procedures both authorized and prohibited under R.C. 4715.39. R.C. 4715.39 specifically prohibits BQP from removing calcarious deposits or accretions from the teeth. In relevant part it states:

"Nothing in this section shall be construed * * * to authorize [basic] 'qualified personnel' * * * to perform the duties of a dental hygienist *including the removal of calcarious deposits or accretions* on the crowns and roots of teeth * * *.'' (Emphasis added.)

The trial court gave deference to the testimony of appellants' expert, that *hardened* cement was an accretion within the meaning of the statute. Thus, BQP are prohibited from performing this specific task under R.C. 4715.39.

We hold that an advisory opinion letter which has the effect of permitting dentists to delegate intraoral procedures to basic qualified personnel without an extant rule violates R.C. 4715.39.

The court of appeals reviewed those sections of the Revised Code and the rules promulgated by the board which set forth the lawful practices of dental hygienists and qualified personnel. The court concluded that R.C. 4715.23 and 4715.39 and Ohio Adm. Code 4715-3-01(L), 4715-3-01(D) and (E), and 4715-9-01 have no specific provisions concerning the types of instruments that may be used, but only pertain to the tasks that may be performed. We disagree. Most dental tasks can only be completed by the use of dental instruments. Which instruments, and how they will be used, must certainly be considered in light of the legislature's intent to prevent harm. Considerations of public safety require a more reasonable interpretation.

Uncontroverted expert testimony established that the surgical instruments often used to remove hardened cement also remove some amount of enamel any time they are used. Whether in skilled or unskilled hands, constant use of these tools will damage the tooth. As previously noted, R.C. 4715.39 provides that the board, "by rule * * * or *otherwise,*" may not authorize BQP to engage in any intraoral procedure that contributes to or results in irremediable alterations of the oral anatomy. It is

this court's conclusion that tasks or procedures which require the use of dental instruments in ways more likely than not to cause irremediable alterations of the oral anatomy may not lawfully be delegated to basic qualified personnel by rule or otherwise.

Accordingly, this court reverses the judgment of the court of appeals and reinstates the decision and judgment entry of the trial court.

*Judgment reversed.*

CELEBREZZE, C.J., SWEENEY, WISE, C. BROWN and WRIGHT, JJ., concur.

HOLMES, J., dissents.

WISE, J., of the Fifth Appellate District, sitting for LOCHER, J.

HOLMES, J., dissenting. The primary question that needs to be answered is one of the jurisdiction of the trial court over this matter. The complaint was one seeking a declaratory judgment pursuant to R.C. 2721.03, which section provides in pertinent part:

"Any person interested under a deed, will, written contract, or other writing constituting a contract, or whose rights, status, or other legal relations are affected by a constitutional provision, statute, rule as defined in section 119.01 of the Revised Code, municipal ordinance, contract, or franchise, may have determined any question of construction or validity arising under such instrument, constitutional provision, statute, rule, ordinance, contract, or franchise and obtain a declaration of rights, status, or other legal relations thereunder."

First, pertaining to the application of such procedure, we should note, as did the court of appeals herein, that there must be a justiciable controversy between adverse parties wherein "speedy relief is necessary to the preservation of rights." *American Life & Accident Ins. Co.* v. *Jones* (1949), 152 Ohio St. 287 [40 O.O. 326], paragraph two of the syllabus. Courts may not render abstract or hypothetical opinions. The issue presented to the trial court here did not question the constitutionality of a statute or a rule; it did not question the interpretation of a statute or a rule—instead, it concerned the application or meaning of a letter from an administrative agency, the Ohio State Dental Board ("board"), in answer to a query from the Ohio Association of Orthodontists as to the practical application of an existing rule of the board as it would apply to those working in dental offices, and known as "Basic Qualified Personnel."

The letter in question does not constitute a rule, rather it represents the professional opinion of the board as to the permissible scope of the activities of the basic qualified personnel operating under the direction of dentists. This is in essence, and in law, only an advisory opinion letter.

This is the type of opinion and professional commentary regularly and commonly written by the executives or staff of professional boards or state agencies in order to provide useful guidance to practitioners who wish to comply with statutes and regulations promulgated thereunder. These types of letters do not have the force of a statute or regulation. As such, the advisory letter here at issue is not subject to judicial review on assertion of a third party. Therefore, at the outset, the court of appeals was correct in concluding that there was no live case or controversy for a determination pursuant to the Declaratory Judgments Act.

Second, if one must arrive at the merits of the case, this court, in overriding the professional determination of the Ohio State Dental Board, has consecrated itself as Ohio's "Super Dental Board" with assumed professional dental knowledge beyond that of those who obtained their professional skills in the school of dentistry. I have no such knowledge; therefore, I follow the law as I see it.

The trial court improperly ruled upon the opinions of appellants' experts in substituting its judgment for that of the board. The record is void of fraud or gross abuse of discretion. In the absence of such, the informed and expert opinions of the board should be afforded deference from the courts. The purpose of the board, composed of persons with necessary knowledge and experience in dentistry and representing all interests, is to facilitate the promotion of the safe practice of dentistry. R.C. 4715.03(C). See, also, *Farrand* v. *State Medical Bd.* (1949), 151 Ohio St. 222 [39 O.O. 41], paragraph one of the syllabus.

The letter from the board to the Ohio Association of Orthodontists, in interpreting Ohio Adm. Code 4715-3-01, stated, *inter alia,* that: "* * * Some of these procedures which may be lawfully delegated to the BQP would include: removal of cement, making of impressions for diagnostic study models and orthodontic appliances, removal of loose bands, and removal of debris from the coronal portion of a tooth which would interfere with the cementation or bonding process. This removal of debris may be done with any instrument or device which would not be construed as 'preventive polishing of the clinical crown of teeth' as that phrase is used in Rule 4715-9-01." Thus, the board's advisory letter, interpreting the meaning of language used in Ohio Adm. Code 4715-3-01 (and 4715-11-03), applied to tasks allowed to be performed by basic qualified personnel of basic remedial intraoral dental and/or procedures within the existing rules.

The expert for the board, Dr. Frank A. Recker, a dentist and the secretary of the board, testified that one of the activities authorized by Ohio Adm. Code 4715-3-01 explained in the questioned letter was the removal of cement from the teeth, and that such was not considered to be an "accretion" by the board, but that an "accretion" is a "deposit that accumulates over time." The common usage of the term is a "growth or increase in size by gradual external addition, fusion, or inclusion."

28

American Heritage Dictionary (2 College Ed.). The courts, meaning the trial court and this court, should take judicial notice of such professional usage. The term "accretion" was intended to mean the natural gradual growth or accumulation, not that material which was placed there inadvertently by man in the orthodontic process.

The explanatory material included in the board's letter was only in conformity with the rules promulgated by the board, which rules were in accord with statutory enactments providing for them.

Accordingly, I would affirm the judgment of the court of appeals.