New Boston Coke Corporation, Appellant, v. Tyler, Dir., Appellee.

[Cite as New Boston Coke Corp. v. Tyler (1987), 32 Ohio St. 3d 216.]

(No. 86-1798—Decided September 2, 1987.)

*Porter, Wright, Morris & Arthur,* *Samuel H. Porter* and *Robert A. Meyer, Jr.,* for appellant.

*Anthony J. Celebrezze, Jr.,* attorney general, *Dominic J. Hanket* and *Sharon Sigler,* for appellee.

SWEENEY, J. The present action has been predicated upon what consideration, if any, the Director of the Ohio Environmental Protection Agency must afford the criteria prescribed by R.C. 3704.03(E)(1) through (3) in amending Ohio Adm. Code 3745-17-07(E)(4). It is the contention of appellant that the director was required to consider the factors set forth in the aforementioned statute prior to the promulgation of the ten percent particulate emission limitation contained in the rule. Appellee responds that such consideration is required only "to the extent consistent with the federal Clean Air Act." R.C. 3704.03(E). Given the virtual certainty that failure to adopt the ten percent limitation would result in federal disapproval of Ohio's Part D SIP, appellee essentially contends that consideration of the R.C. 3704.03(E)(1) through (3) criteria and subsequent adoption of less stringent standards would amount to a futile act. Appellee further maintains that consideration of the criteria was in fact undertaken by the director shortly after initial rulemaking was commenced in 1978.

Preliminary to consideration of the relative merits presented by these arguments, however, is the threshold question of appellant's standing to prosecute the instant appeal.

R.C. 3745.04 governs appeals of OEPA rulemaking to the Environmental Board of Review. It provides in part:

"Any person *who was a party to a proceeding before the director* may participate in an appeal to the environmental board of review for an

order vacating or modifying the action of the director of environmental protection or local board of health, or ordering the director or board of health to perform an act. The environmental board of review has exclusive original jurisdiction over any matter which may, under this section, be brought before it." (Emphasis added.)

The unmistakable import of this section is that review by the Environmental Board of Review is confined to those entities which actually appeared in the rulemaking proceeding before the director. The intent of the legislation was clearly to promote administrative and judicial economy and to assure that any objection interposed with regard to agency rules be considered *ab initio* by the authority responsible for promulgating them. Thus, in *General Motors* v. *McAvoy* (1980), 63 Ohio St. 2d 232, 238, 17 O.O. 3d 143, 147, 407 N.E. 2d 527, 531, it was observed: "Under R.C. 3745.04 the right to appeal to the EBR is *limited* to 'any person who was a party to a proceeding before the director.'" (Emphasis added.)

A "party" for purposes of EBR review under R.C. 3745.04 was further defined in *Cincinnati Gas & Electric Co.* v. *Whitman* (App. 1974), 11 O.O. 3d 192, 198, as "any person affected by the proposed action who appears in person, or by his attorney, and presents his position, arguments, or contentions orally or in writing, or who offers or examines witnesses or presents evidence tending to show that said proposed rule, amendment or rescission, if adopted or effectuated, will be unreasonable or unlawful[,] * * * [or] * * * a person who appears in person, or by his attorney, and presents his position, arguments or contentions as to the lawfulness and reasonableness of such proposed rule, amendment or rescission."

It is beyond question that appellant failed to meet the criteria of a party as prescribed by R.C. 3745.04. Appellant neither appeared in person nor through counsel in the hearing conducted by the director. Appellant did not present evidence or arguments, and did not call witnesses or examine witnesses called by others. It was thereby precluded from pursuing an appeal to the Environmental Board of Review.

Accordingly, we hold that an entity which fails to appear, submit evidence or otherwise participate in a rulemaking proceeding conducted by the Director of Environmental Protection lacks standing to challenge administrative rules resulting therefrom in an appeal to the Environmental Board of Review pursuant to R.C. 3745.04.

While acknowledging that it did not participate in the rulemaking proceeding before the director, appellant maintains that any objections based on standing have been waived by appellee because they were not raised on appeal to the Environmental Board of Review or assigned as error before the court of appeals. However, the issue of standing, inasmuch as it is jurisdictional in nature, may be raised at any time during the pendency of the proceedings. See *United States* v. *Storer Broadcasting Co.* (1956), 351 U.S. 192, 197.

Accordingly, the decisions of the court of appeals and the Environmental Board of Review are hereby vacated and the appeal is dismissed.

*Appeal dismissed.*

LOCHER, HOLMES and WRIGHT, JJ., concur.

MOYER, C.J., DOUGLAS and H. BROWN, JJ., dissent.

LOCHER, J., concurring. I fully agree that the appellant herein lacks

the necessary standing to challenge the administrative rule promulgated by the OEPA. In my view, however, today's decision misses the forest for the trees. The real issue here involves the protection of one of our most vital natural resources: the air that we breathe.

There is no doubt that the quality of our air has been steadily worsening over the years. Congress created the Clean Air Act as the means by which such problems as smog, toxic air pollution and acid rain can be dealt with. Section 7401 of the Act provides as follows:

"(a) The Congress finds—
"* * *
"(2) that the growth in the amount and complexity of air pollution brought about by urbanization, industrial development, and the increasing use of motor vehicles, has resulted in mounting dangers to the public health and welfare, including injury to agricultural crops and livestock, damage to and the deterioration of property, and hazards to air and ground transportation;
"* * *
"(b) The purposes of this title are—
"(1) to protect and enhance the quality of the Nation's air resources so as to promote the public health and welfare and the productive capacity of its population; * * *."

Likewise, R.C. 3704.02 states that the purposes of R.C. Chapter 3704, Ohio's counterpart to the Clean Air Act, are, *inter alia,* "[t]o protect and enhance the quality of the state's air resources so as to promote the public health, welfare, and economic vitality of the people of the state; * * *."

The above purposes must be kept in mind when resolving questions arising under these statutes and the regulations issued pursuant thereto. Otherwise, because of the technical intricacies that are often involved in interpreting these statutes and regulations, it becomes easy to lose sight of the goals of preserving and improving the quality of our atmospheric resources. Too often the real issue of environmental protection is obscured by the complication of administering the system and enforcing the rules.

As I see it, the OEPA's regulation amending the coke oven door leak limitation from sixteen percent to ten percent is perfectly consistent with the purposes of the Clean Air Act and R.C. Chapter 3704. The regulation is designed to reduce the amount of particulate matter polluting the air of our state, so that we can meet the national air quality standards formulated by the USEPA under the Clean Air Act. Furthermore, R.C. 3704.02(B) states that "all regulations adopted pursuant to Chapter 3704. of the Revised Code * * * shall, to the extent reasonably possible, be construed to be consistent with the federal Clean Air Act and to promote the purposes of Chapter 3704. of the Revised Code." For these reasons, I would uphold the validity of the regulation in question in addition to holding that the appellant lacks the standing necessary to challenge it.

DOUGLAS, J., dissenting. The essential facts of this case are not in dispute.[2] Pursuant to the Clean Air Act Amendments of 1977, Sections 107(d)(1) and (d)(2) of the federal Clean Air Act, Sections 7407(d)(1) and (2), Title 42, U.S. Code, the Ohio Environmental Protection Agency ("OEPA")

---

[2] Pursuant to law, the director appealed the order of the board directly to the Tenth District Court of Appeals. Thus, the court of appeals is the *only* court which has previously reviewed this matter. The question of standing was not raised, argued or briefed by appellee in that court.

identified areas within the state of Ohio which conformed to, exceeded or did not meet the primary and secondary National Ambient Air Quality Standards ("NAAQS") and submitted a list of such locations to the United States Environmental Protection Agency ("USEPA") for review and approval as potential "attainment" and "non-attainment" areas. On October 5, 1978, the USEPA established the official "attainment—non-attainment" designations for the state of Ohio. The Portsmouth and New Boston areas of Scioto County were designated "primary non-attainment" for total suspended particulates.

Where the "non-attainment" designation applies, the states are required, pursuant to "Part D" of the Clean Air Act,[3] to include in their state implementation plans ("SIP"), the operative strategy for meeting the NAAQS, certain stringent control measures to assure rapid air quality improvement within the non-attainment areas. One of these control measures requires the imposition of Reasonably Available Control Technology ("RACT")[4] to accelerate the attainment of NAAQS. Pursuant to the Clean Air Act, USEPA is required to approve all state SIPs.

While developing its "Part D" SIP, OEPA originally drafted a rule providing for a ten percent coke oven door leak limitation.[5] After receiving comments from affected parties, including the Ohio Steel Group, OEPA redrafted the ten percent rule to provide for a sixteen percent door leak limitation. Ultimately, despite opposition by the USEPA,[6] appellee, the Director of OEPA, adopted the proposed sixteen percent door leak limitation. This rule became effective June 18, 1980 and was set forth as Ohio Adm. Code 3745-17-07(E)(4).[7]

---

[3] Sections 171-178 of the federal Clean Air Act, Sections 7501-7508, Title 42, U.S. Code.

[4] OEPA has adopted USEPA's definition of RACT in Ohio Adm. Code 3745-17-01(B)(15), which provides:

" 'Reasonably available control measures' means the control technology which enables a particular fugitive dust source to achieve the lowest particulate matter emission level possible and which is reasonably available considering technological feasibility and cost-effectiveness."

[5] This type of regulation limits the amount of visible emissions which may escape from a coke oven door during operation. A ten percent rule permits no more than ten percent of all coke oven doors to emit visible pollutants at any one time. For example, in the instant case New Boston Coke has seventy coke ovens with two doors per oven. A ten percent rule would thus permit no more than fourteen doors at New Boston to leak visible emissions during any one time period.

[6] As early as 1978, the USEPA had established that RACT was a ten percent door leak limitation for coke oven doors. Additionally, in April 1979, while commenting on Ohio's draft of its Part D SIP, USEPA reiterated that RACT was a ten percent door leak limitation and that the sixteen percent limitation, if not changed, could result in the disapproval of Ohio's SIP. Further, on October 17, 1979, during the OEPA hearing on the proposed rule which would become part of Ohio's Part D SIP, USEPA again expressed its disapproval of the sixteen percent door leak limitation.

[7] Ohio Adm. Code 3745-17-07(E)(4) provided:

"Visible emission limitations for a coke oven battery:

"* * *

"(4) At no time shall there be visible emissions from more than sixteen per cent of the oven doors. For purposes of this paragraph, an oven door and the associated chuck door on the pusher side of the battery shall be considered as one door."

In August 1981, USEPA indicated that it would disapprove portions of Ohio's SIP, including the sixteen percent door leak limitation. In November 1981, after submitting written comments to USEPA, OEPA and USEPA met to discuss, *inter alia,* the door leak limitation standard to be adopted in Ohio. Subsequently, on November 26, 1982, appellee proposed amendments to Ohio's Air Pollution Rules, including · the reduction of the then current sixteen percent door leak limitation to a ten percent door leak limitation.

On January 6, 1983, public hearings, in which written comments were submitted by the USEPA and a variety of industrial representatives, were held regarding the proposed amendments. Ultimately on August 17, 1983, appellee adopted the amended rules for Ohio's SIP, including the new ten percent door leak limitation rule set forth in Ohio Adm. Code. 3745-17-07(E)(4).[8]

Thereafter, appellant, New Boston Coke Corporation, appealed the adoption of the amended rules to the Environmental Board of Review ("board"), alleging, in part, that the amendments were, both generally and as applied to appellant, *ultra vires* acts by the Director of OEPA in contravention of the provisions set forth in R.C. 3704.03(E). The board found appellee's adoption of the amendments unreasonable and unlawful on the basis that no measurable increase in the air quality would result from such amendments and that appellee had adopted the amendments without consideration of the factors set forth in R.C. 3704.03 (E). As a result of its finding, the board vacated appellee's order of amendment as it applied to appellant.

In reversing the board's decision, the court of appeals ruled that R.C. 3704.03 did not mandatorily require consideration of the criteria and source-specific data each time appellee adopts, modifies or repeals a rule. The court reasoned that the administrator's construction of the statute was reasonable, and that courts should defer to an administrative agency's interpretation of a statute when that agency has accumulated expertise in its area.

Given this background, we are now called upon to decide whether R.C. 3704.03(E) requires the Director of OEPA to consider certain source-specific data each time he adopts, modifies or repeals a rule pertaining to the prevention, control or abatement of air pollution, including rules prescribing emission standards for air contaminants.

Appellant contends that R.C. 3704.03(E) requires the Director of OEPA to hear and consider evidence concerning source-specific data whenever the director modifies or amends a rule. Conversely, appellee asserts, and the court of appeals held, that R.C. 3704.03(E) requires no such consideration when the director is amending a rule. Based upon the facts

---

[8] Ohio Adm. Code 3745-17-07(E)(4), effective October 1, 1983, provides:

"Visible emission limitations for a coke oven battery:

"* * *

"(4) At no time shall there be visible emissions from more than ten per cent of the oven doors. For purposes of this paragraph, an oven door and the associated chuck door on the pusher side of the battery shall be considered as one door. Two oven doors, which represent the last oven charged prior to the commencement of visible emission readings performed in accordance with paragraph (B)(2)(c) of Rule 3745-17-03 of the Administrative Code, shall be exempted from this visible emission limitation."

before us, it is my judgment that appellant's position is correct.

R.C. 3704.03(E) provides that the director may "[a]dopt, modify, and repeal rules for the prevention, control, and abatement of air pollution, including rules prescribing for the state as a whole or for various areas of the state emission standards for air contaminants * * *." Yet, this section further provides that when "* * * *adopting, modifying,* or repealing *any such rules,* the director, to the extent consistent with the federal Clean Air Act, shall hear and give consideration to evidence relating to:

"(1) Conditions calculated to result from compliance with such rules and their relation to benefits to the people of the state to be derived from such compliance;

"(2) The quantity and characteristics of air contaminants, the frequency and duration of their presence in the ambient air, and the dispersion and dilution of such contaminants;

"(3) Topography, prevailing wind directions and velocities, physical conditions and other factors that may or may not combine to affect air pollution." (Emphasis added.)

Thus, while the director is vested with the statutory authority to adopt, modify or repeal rules which prescribe emission standards for air contaminants, he *must,* when doing so, hear *and* consider certain evidence. In the case at bar, it is undisputed that in 1980, the above requirements were substantially complied with when adopting the sixteen percent door leak limitation, Ohio Adm. Code 3745-17-07(E)(4). yet, it is further undisputed that in 1983, appellee *did not follow* these same procedures when amending Ohio Adm. Code 3745-17-04(E)(4), the sixteen percent door leak limitation. Therefore, absent justification for this omission, appellee's con-

duct, in amending Ohio Adm. Code 3745-17-04(E)(4), is contrary to the express language of R.C. 3704.03(E) and the resulting rule is unlawful.

Appellee argues, and the court of appeals held, that contrary to the language contained within R.C. 3704.03(E), he is not required, when amending a rule, to hear and consider the factors set forth in R.C. 3704.03(E)(1) through (3). Appellee asserts that he has interpreted R.C. 3704.03(E) as not requiring the consideration of such evidence, and further, that as an administrative agency, deference should be given to such an interpretation when a statute is within the realm of his agency's expertise. Additionally, appellee argues that his interpretation of R.C. 3704.03(E) is consistent with the Clean Air Act, which requires no consideration of this type of evidence when amending a rule. I do not agree.

While "* * * [c]ourts, when interpreting statutes, are required to give *due deference* to an administrative interpretation formulated by an agency which has accumulated substantial expertise, and to which agency Congress has delegated the responsibility of implementing the congressional command * * *" (emphasis added), *Jones Metal Products Co.* v. *Walker* (1972), 29 Ohio St. 2d 173, 181, 58 O.O. 2d 393, 398, 281 N.E. 2d 1, 8, we are not permitted to ignore the express meaning, intent and import of the language contained within the statute at issue before us.

"Absent ambiguity, a statute is to be construed *without* resort to a process of statutory construction." (Emphasis added.) *Ohio Dental Hygienists Assn.* v. *Ohio State Dental Bd.* (1986), 21 Ohio St. 3d 21, 23, 21 OBR 282, 284, 487 N.E. 2d 301, 303. As this court stated in paragraph five of the syllabus of *Sears* v. *Weimer* (1944), 143 Ohio St. 312, 28 O.O. 270, 55 N.E. 2d 413:

"Where the language of a statute is plain and unambiguous and conveys a clear and definite meaning there is no occasion for resorting to rules of statutory interpretation. An unambiguous statute is to be *applied, not interpreted.*" (Emphasis added.)

The language of R.C. 3704.03(E) is clear and unambiguous. When the Director of OEPA *adopts or modifies* a rule, he *shall* hear and consider certain evidence. Therefore, as no statutory construction is required to obtain the intent of the statute, it should be applied—not interpreted. Appellee's "interpretation" is not in accordance with the express language of R.C. 3704.03(E) and thus is improper.

Contrary to appellee's assertion, the requirement within the statute that the director's actions, in adopting or modifying a rule, be consistent with the Clean Air Act neither imbues the statutory language with ambiguity nor prohibits the consideration of the evidence which is set forth in R.C. 3704.03(E)(1) through (3). The consistency required is substantive compliance and consistency with NAAQS, *not* procedural consistency as appellee contends. The *rules* and *standards* adopted by OPEA, not the steps utilized in obtaining these standards, must comply with the Clean Air Act. Congress placed the burden of compliance upon the states. It did not, however, impose procedures for the attainment of such standards. The states are free, within the boundaries of reason and constitutional due process, to create their own procedural posture for attaining the required primary and secondary NAAQS. See, for example, Sections 7407 and 7416, Title 42, U.S. Code, which place responsibility upon the state to achieve the primary and secondary NAAQS. Conspicuously absent is *any* reference regarding the procedures to be utilized in achieving such compliance.

While R.C. 3704.03(E) requires procedural steps, for amending rules, not mandated by the Clean Air Act, the mere presence of such steps makes neither the procedures utilized nor the rules or standards resulting from such procedures inconsistent with the Clean Air Act. The legislature has, in effect, provided additional procedural and due process safeguards before an air pollution regulation is adopted within this state. To say that such safeguards are inconsistent with the federal Clean Air Act, when the Act expressly leaves the development and implementation of such procedures to the states, is inaccurate.

Therefore, the statutory procedures for amending OEPA rules, set forth in R.C. 3704.03(E), are not inconsistent with the Clean Air Act, and accordingly when the Director of Environmental Protection seeks to amend or modify a rule promulgated pursuant to R.C. 3704.03(E), he must hear and give consideration to evidence relating to the factors set forth within R.C. 3704.03(E)(1) through (3).

The undisputed evidence shows that the above criteria were *not* evaluated, as was required, prior to the 1983 amendment of Ohio Adm. Code 3745-17-07(E)(4). That amendment is, therefore, unlawful and of no further force or effect.

Accordingly, the judgment of the court of appeals should be reversed and final judgment should be entered for appellant. Since this is contrary to the position of the majority, I respectfully dissent.

MOYER, C.J., and H. BROWN, J., concur in the foregoing dissenting opinion.

HERBERT R. BROWN, J., dissenting. Because I believe that the majori-

ty's disposal of the issues in this case on jurisdictional grounds has neither a factual nor a legal foundation, I must dissent.

It is necessary to recite the basis upon which this case arises. The challenge to the environmental regulation in question was made by appeal to the Environmental Board of Review. That appeal was filed by three parties: Armco, Inc., Republic Steel Corp. and New Boston Coke Corp. Armco and Republic Steel *did* appear and oppose the rule at issue during the hearing process. Thus they, under any interpretation of R.C. 3745.04, had standing to appeal. Subsequently, Armco settled and Republic voluntarily dismissed its appeal, leaving New Boston as the sole appellant. The question of jurisdiction with respect to New Boston was raised before the board by the Director of Environmental Protection. The board made these findings of *fact*:

"13. Comments were submitted by various Ohio steel companies opposing the proposed 10% limit. These comments urged, *inter alia,* that the 10% limit was unreasonable, that OEPA should not adopt the 10% limit at all unless ambient air quality would be appreciably improved thereby. * * *

"* * *

"17. *New Boston's appeal* to the Environmental Board of Review *raises the same issues* as do the comments of Ohio steel companies referred to in Finding No. 13, above, which comments were rejected by OEPA in the rulemaking proceeding appealed from." (Emphasis added.)

These fact findings have not been challenged and must be accepted.

The board then concluded, as a matter of law:

"1. Section 3745.04 O.R.C. states in pertinent part, '[A]ny person who was a party to a proceeding before the Director may participate in an appeal to the Environmental Board of Review.' A 'proceeding' includes a rulemaking proceeding as well as an adjudicatory hearing. See *Cincinnati Gas & Electric Co.* v. *Whitman,* 11 Ohio Ops. 3d 192 (Franklin Cty. App., 1974). 'Persons adversely affected by the promulgation of a regulation by the Director may appeal to the Board pursuant to R.C. 3745.04.' (*C.E.I., et al.* v. *Williams, et al.,* Franklin Cty. App. No. 76AP-929, 1977.) The Board's jurisdiction under Section 3745.04 O.R.C. has been interpreted broadly. * * * *New Boston was not required under the facts of this case to participate in the notice and comment proceedings before the Director in order to invoke the Board's jurisdiction.*"

The majority fails to deal with the disposition of the jurisdictional issue by the board. Indeed, the majority fails to mention the board's findings on this issue.

The board, in rejecting the challenge to its jurisdiction, was acting on the basis of well-settled administrative law. In *Natural Resources Defense Council, Inc.* v. *U.S. Environmental Protection Agency* (C.A.D.C. 1986), 804 F. 2d 710, 714, the court explained:

"Courts have long required that a party seeking review of agency action exhaust its administrative remedies before seeking judicial relief. *See, e.g., Myers* v. *Bethlehem Shipbuilding Corp.,* 303 U.S. 41, 50-51, 58 S. Ct. 459, 463, 82 L. Ed. 638 (1938). In the case before us, the administrative remedy was participation in the rulemaking proceedings during the comment period. Indeed, this court generally requires such participation as a prerequisite to petitioning for direct review of the resulting regulations. *See Environmental Defense*

*Fund* v. *EPA,* 598 F. 2d 62, 91 (D.C. Cir. 1978).

"The NRDC did not participate in the rulemaking proceedings in this case, but argues that we should not dismiss its petition for review because the agency in fact considered the statutory issue pressed on appeal. The NRDC is correct. *This court has excused litigants from their exhaustion obligations as to a particular issue so long as the agency in fact considered the issue. See Washington Association for Television & Children* v. *FCC,* 712 F. 2d 677, 682 n. 10 (D.C. Cir. 1983); *Etelson* v. *Office of Personnel Management,* 684 F. 2d 918, 923 (D.C. Cir. 1982); *ASARCO, Inc.* v. *EPA,* 578 F. 2d 319, 320-21 n. 1 (D.C. Cir. 1978); *Safir* v. *Kreps,* 551 F. 2d at 452. *Thus, courts have waived exhaustion if the agency 'has had an opportunity to consider the identical issues [presented to the court] . . . but which were raised by other parties,' see Buckeye Cablevision, Inc.,* v. *United States,* 438 F. 2d 948, 951 (6th Cir. 1971), or if the agency's decision, or even a dissenting opinion, makes it clear that the agency had 'the opportunity to consider' 'the very argument pressed' by the petitioner on judicial review. *Office of Communication of the United Church of Christ* v. *FCC,* 465 F. 2d 519, 523 (D.C. Cir. 1972)." (Emphasis added.)

In the case *sub judice,* the board of review found that the issues raised by New Boston were presented to the OEPA by two other parties during the rulemaking proceeding. Beyond that, those two other parties, together with New Boston, initiated the very appeal to the board of review which has now found its way to us.

Thus, the majority should not avoid the substantive issues in this case, notwithstanding the superficial allure of the claim of lack of standing. This case should be decided on the merits. In doing so, I would resolve the issues as Justice Douglas has done in his separate dissenting opinion.

MOYER, C.J., concurs in the foregoing dissenting opinion.