SWAN SUPER CLEANERS, INC., APPELLEE, *v.* TYLER, DIR., APPELLANT.

(Nos. 87AP-41 and 87AP-42 — Decided April 5, 1988.)

*Vorys, Sater, Seymour & Pease, John W. Hoberg* and *Martyn T. Brodnik,* for appellee.

*Anthony J. Celebrezze, Jr.,* attorney general, *Dale T. Vitale* and *Brad L. Tammaro,* for appellant.

BOWMAN, J. This is an appeal by the Director of the Ohio Environmental Protection Agency ("director") from a decision by the Ohio Environmental Board of Review ("EBR") ordering the director to vacate the adoption of Ohio Adm. Code 3745-21-09(AA), which regulates operations of and emissions from commercial dry-cleaning establishments utilizing the chemical solvent perchloroethylene ("perc").

In April 1982, the director adopted Ohio Adm. Code 3745-21-09(AA) and in March 1986, the director adopted minor amendments to this regulation. Swan Super Cleaners, Inc. ("Swan"), in two separate appeals, appealed the director's adoption of and amendments to these perc regulations. The EBR then consolidated both of Swan's appeals. Swan raised two sets of assignments of error in its appeal to the EBR. Swan's first set of

assignments of error claimed that the regulation's emission limits are unlawful and unreasonable because there is no longer any scientific evidence requiring such emission limits. Swan's second set of assignments of error basically alleged that the effects of the Ohio perc regulations are unlawful and unreasonable.

The parties jointly moved and the EBR ruled to bifurcate the hearing on Swan's appeal in order to consider each set of assignments of error separately. Based on the stipulated facts submitted by the parties, the EBR ruled on December 5, 1986, that Ohio Adm. Code 3745-21-09(AA) "is unlawful and unreasonable because there is no valid technical support for controlling emissions of perchloroethylene from dry cleaners as a precursor of and the purpose of achieving and maintaining ambient air quality standards for ozone." The EBR, therefore, ordered that the adoption of the perc regulations be vacated.

The director has appealed the EBR's decision to this court, pursuant to R.C. 3745.06, and asserts the following assignment of error:

"Whether the Environmental Board of Review erred in finding that the adoption of O.A.C. 3745-21-09(AA) by the Director of the Ohio Environmental Protection Agency was unreasonable and unlawful when said regulation was necessary to make Ohio law consistent with the Clean Air Act."

The parties have stipulated to the following facts in this case:

"1. On April 29, 1982, the Director adopted amendments to O.A.C. 3745-21-09, including the adoption of O.A.C. Subsection 3745-21-09(AA).

"2. On March 21, 1986, the Director made some minor amendments to O.A.C. 3745-21-09(AA).

"3. Swan Super Cleaners, Inc. filed its Notice of Appeal on June 7, 1982. Another Notice of Appeal was filed on April 15, 1986. These appeals involve only O.A.C. 3745-21-09(AA) and not any other provisions of O.A.C. 3745-21-09.

"4. The Director's purpose for adopting O.A.C. 3745-21-09(AA), as amended, was to regulate emissions of perchloroethylene ('perc') from dry-cleaning facilities as a part of the State of Ohio's State Implementation Plan ('SIP') governing the control of photochemically reactive emissions and volatile organic compounds from stationary sources in order to achieve and maintain ambient air quality standards for ozone.

"5. The sole technical foundation supporting Ohio EPA's regulation of emissions of perc as a method for achieving and maintaining ambient air quality standards is a 1977 USEPA [United States Environmental Protection Agency] policy statement (42 FR 35314) and the underlying scientific study which found that perc was judged, based on evidence available at that time, to have low but not negligible photochemical reactivity, and thus that its release to the atmosphere would adversely affect achievement and maintenance of ambient air quality standards.

"6. USEPA's 1977 policy statement, as amended on June 4, 1979 (44 FR 32042), May 16, 1980 (45 FR 32424) and July 22, 1980 (45 FR 48941), established a list of compounds consisting of methane, ethane, methylene chloride, methyl chloroform, trichlorofluoromethane, dichlorodifluoromethane, chlorodifluoromethane, trifluoromethane, trichlorotrifluoroethane, dichlorotetrafluoroethane and chloropentafluoroethane, which have negligible photochemical reactivity and which are exempt from regulation under state ozone SIP's. Ohio EPA exempts these compounds from regula-

tion under its ozone SIP due to their negligible photochemical reactivity.

"7. This same notice discussed perc and noted that it had low, but not negligible, photochemical reactivity. The notice subjected perc to reasonably available control technology (RACT).

"8. Ohio EPA believes that it is required to regulate perc in its State Implementation Plan for ozone because of requirements placed upon it by USEPA as published in the Federal Register on April 4, 1979, and August 28, 1979.

"9. On October 24, 1983, the USEPA reported new technical evidence which contradicted the original evidence for the regulation of perc as a photochemically reactive substance for the purpose of achieving air quality standards for ozone.

"10. In its October 24, 1983 Federal Register notice, USEPA concluded that perc is no more photochemically reactive than the compounds that are currently on the list of negligibly reactive compounds which are exempt from Ohio's ozone SIP.

"11. Possible health effects from emissions of perc are under active consideration by the USEPA and may possibly, in the future, form the basis for the regulation of perc under other provisions of the Clean Air Act, but were not the basis for the regulation of perc as a photochemically reactive substance for the purpose of achieving air quality standards for ozone.

"12. Although USEPA has proposed to deregulate perc in the Federal Register notice dated October 24, 1983, final action has not been taken by USEPA."

With no facts being in issue, the basis of the director's appeal is that the enactment of Ohio Adm. Code 3745-21-09(AA) cannot be unlawful and unreasonable, as the EBR held, when the adoption of this regulation was necessary to make Ohio law consistent with the Clean Air Act. Swan asserts, however, that the regulation cannot be reasonable because there are now no scientific findings to support the regulation.

This appeal, therefore, first requires a review of the regulating responsibility given to the director by Ohio law and the Clean Air Act. The Clean Air Act, enacted in 1970, requires each state, after conducting state hearings, to adopt a State Implementation Plan ("SIP") to meet the National Ambient Air Quality Standards ("NAAQS") of Section 7410, Title 42, U.S. Code. The Administrator of the United States Environmental Protection Agency ("USEPA") must then approve or disapprove the SIP. The NAAQS deal with emissions into the outdoor air and are fixed on a national basis at levels which, through studies, the USEPA has determined will protect the outdoor air quality. See *Train* v. *Natural Resources Defense Council, Inc.* (1975), 421 U.S. 60. A SIP, according to Section 110(a)(2)(A) of the Clean Air Act (Section 7410[a][2][A], Title 42, U.S. Code), must include "emission limitations" which are regulations regarding the substances emitted into the air from various stationary sources, such as factories, power plants, or, in the present case, dry-cleaning establishments. *Train, supra,* at 78.

Under Section 110(a)(2) of the Clean Air Act (Section 7410[a][2], Title 42, U.S. Code), the USEPA "is *required* to approve a state plan which provides for the timely attainment and subsequent maintenance of ambient air standards, and which also satisfies that section's other general requirements." (Emphasis *sic.*) *Train, supra,* at 79. The United States Supreme Court also stated in *Train* that the Clean Air Act does not give the USEPA the authority "to question the wisdom of a State's

choices of emission limitations" as long as they are part of a plan which satisfies Section 110(a)(2) and that "so long as the ultimate effect of a State's choice of emission limitations is [in] compliance with the national standards for ambient air, *the State is at liberty to adopt whatever mix of emission limitations it deems best suited to its particular situation.*" (Emphasis added). *Id.* at 79.

The Ohio Legislature has charged the Director of the Ohio EPA with the responsibility for conducting hearings and adopting Ohio's SIP. Pursuant to R.C. 3704.03(D), the director shall "[a]dopt, modify, and repeal rules prescribing ambient air quality standards for the state as a whole or for various areas of the state that are consistent with and no more stringent than the national ambient air quality standards in effect under the federal Clean Air Act." When adopting, modifying, or repealing these rules, the director is to give consideration to "conditions calculated to result from compliance with such rules and their relation to benefits to the people of the state to be derived from such compliance." R.C. 3704.03(E)(1).

Regarding the particular regulation in question, Ohio Adm. Code 3745-21-09(AA), the director relied on a USEPA policy statement, published in July 1977, in 42 Fed. Reg. 35314 (July 8, 1977), which the parties have stipulated found perc, "based on evidence available at the time, to have low but not negligible photochemical reactivity, and thus that its release to the atmosphere would adversely affect achievement and maintenance of ambient air quality standards."

Based on this report, as well as Federal Register reports in April 1979 and August 1979 discussing SIP requirements, the director adopted in 1982 (with slight amendments in 1986), Ohio Adm. Code 3745-21-09(AA) as follows:

"(AA) Perchloroethylene dry cleaning facility.

"(1) Except where exempted under paragraph (AA)(2) of this rule, no owner or operator of a perchloroethylene dry cleaning facility may cause, allow or permit the cleaning of articles in perchloroethylene after the date specified in paragraph (C)(34) of rule 3745-21-04 of the Administrative Code, unless the following requirements are met:

"(a) Any dryer which contains articles cleaned in perchloroethylene is to be equipped and operated in accordance with one of the following:

"(i) Any exhaust from the dryer is vented through a carbon adsorber which emits no more than one hundred parts per million by volume of perchloroethylene at any time;

"(ii) The dryer is equipped with or vented to a refrigerated vapor condenser whereby there is no exhaust of perchloroethylene vapors to the ambient air throughout the drying cycle, except for when the dryer's door is momentarily opened during loading or unloading; or

"(iii) The dryer is equipped with or vented to a device which is, in the judgment of the director, at least as effective in controlling emissions of perchloroethylene as the above-mentioned carbon adsorber or refrigerated vapor condenser.

"(b) The waste from any diatomaceous earth filter which has been used to filter perchloroethylene is to contain no more than twenty-five per cent by weight volatile organic compounds, as determined under paragraph (J) of rule 3745-21-10 of the Administrative Code;

"(c) The waste from any distillation operation (solvent still) which has been used to distill perchloroethylene is to contain no more than sixty per cent by weight volatile organic compounds, as determined under para-

graph (J) of rule 3745-21-10 of the Administrative Code;

"(d) Any disposable filter cartridge which has been used to filter perchloroethylene is to be drained in the filter housing for at least twenty-four hours before being discarded; and

"(e) Any equipment which is leaking perchloroethylene liquid is not to be operated until the leak is. repaired.

"(2) Exemptions.

"(a) Paragraph (AA)(1) of this rule shall not apply to any dry cleaning operation which is coin-operated.

"(b) Paragraph (AA)(1)(a) of this rule shall not apply to any facility in which the owner or operator has, in the judgment of the director, satisfactorily demonstrated that a carbon adsorber or refrigerated condenser cannot be installed because of inadequate space.

"(c) Paragraph (AA)(1)(a) of this rule shall not apply to any facility in which the annual amount of fabric dry cleaned with perchloroethylene is less than sixty thousand pounds."

Subsequently, in October 1983, the USEPA, in a proposed revision to the agency's policy concerning air quality, stated that the agency proposed "to add perchloroethylene to the list of organic compounds which are negligibly reactive and thus may be exempt from regulation under State Implementation Plans (SIPs) to attain the national ambient air quality standards (NAAQS) for ozone" because the agency concluded that perc is no more chemically reactive than compounds, such as ethane, that are currently on the list of negligibly reactive compounds which may be exempt from SIPs. In addition, the USEPA declared in the statement that if perc is added to the list of negligibly reactive compounds, then the USEPA would not approve or enforce controls on perc in SIPs, including controls on perc emissions from dry-cleaning operations. 48 Fed. Reg. 49097 (Oct. 24, 1983).

However, the director, in defense of Ohio Adm. Code 3745-21-09(AA), argues that the USEPA's policy revision is only proposed, and also points to the USEPA's warning in this proposed statement that adverse health effects of perc emissions are still being studied and state regulation of perc emissions may be prudent based on these health effects rather than the ozone effects of this chemical. Since the regulation is only proposed, the director argues, vacation of the regulation will be unlawful because it will cause Ohio's air quality guidelines to be inconsistent with federal requirements.

The Third Circuit Court of Appeals faced an argument similar to that made by the director to this court in *Commonwealth of Pennsylvania* v. *Environmental Protection Agency* (C.A. 3, 1974), 500 F. 2d 246. In that case, the Administrator of the USEPA was attempting to enforce certain requirements of a transportation control plan for Pennsylvania to attain air quality. The USEPA had advised the Commonwealth of Pennsylvania that the original data base for determining and promulgating an appropriate air bleed retrofit program for certain vehicles in Allegheny County was erroneous. The Third Circuit Court of Appeals held that:

"* * * Since it is undisputed that there is presently no factual support for the establishment of an air bleed retrofit program in Allegheny County, that part of the Pennsylvania Transportation Control Plan requiring the Commonwealth to do so is arbitrary and capricious and must be set aside." *Id.* at 251.

Appellant's attempts to distinguish *Commonwealth of Pennsylvania* from this case are without merit. Contrary to appellant's assertions, the USEPA had not taken any official action to revoke the regulation at issue in

*Commonwealth.* As noted by the court in *Commonwealth* at 251, fn. 6:

" "* * * A Notice of Proposed Rulemaking calling attention to the information on the alleged measurement errors and asking for public comments on possible plan revisions is being prepared by respondent [the Administrator of the USEPA] and will be issued shortly. This notice will not constitute a commitment on the part of EPA to remove the air bleed retrofit device from the Pittsburgh plan, but will state that respondent will reexamine the strategy in light of revised information."

In regard to the perc regulation at issue in this case, the USEPA stated in 48 Fed. Reg. 49097:

"* * * The 1977 policy statement noted that perchloroethylene (perc) was judged, based on evidence available at that time, to have low but not negligible photochemical reactivity and thus was not included in the exempt list.

"Continuing questions concerning the reactivity of perc, a solvent commonly used in dry cleaning and degreasing, led the Agency to investigate this question in more detail. Although a number of studies had been conducted on the reactivity of perc, the past evidence was neither complete nor consistent. * * *

"On the basis of this study, *the EPA has concluded* that perc is no more photochemically reactive than compounds such as ethane that are currently on the list of negligibly reactive compounds which may be exempt from SIP's to attain the NAAQS for ozone. Thus, the EPA is proposing to add perc to this list and is soliciting comments on this proposed action. * * *" (Emphasis added.)

In this case, as in *Commonwealth of Pennsylvania,* the USEPA has repudiated the basis for its earlier regulation of perc even though a formal repeal of the regulation has not occurred. In this case, as in *Commonwealth of Pennsylvania,* the factual foundation for the particular air quality requirement no longer exists. The regulation was adopted because of the detrimental photochemical reactivity of perc emissions in controlling ozone. The USEPA has now concluded, however, that the photochemical reactivity of perc in controlling ozone is negligible.

On appeal, the EBR, in accordance with R.C. 3745.05, shall affirm the director's action if the action is reasonable and lawful, or shall vacate or modify the director's action if it is unreasonable or unlawful. This court has defined "unlawful" under the statute to mean "that which is not in accordance with law" and "unreasonable" to mean "that which is not in accordance with reason, or that which has no factual foundation." *Citizens Committee* v. *Williams* (1977), 56 Ohio App. 2d 61, 70, 10 O.O. 3d 91, 96, 381 N.E. 2d 661, 667. We also stated in *Citizens Committee* that "the ultimate factual issue to be determined by the board upon the *de novo* hearing is *whether there is a valid factual foundation* for the Director's action and not whether the Director's action is the best or most appropriate action, nor whether the board would have taken the same action." (Emphasis added.) *Id.* at 70, 10 O.O. 3d at 96-97, 381 N.E. 2d at 667. Without a factual foundation, Ohio Adm. Code 3745-21-09(AA) becomes "unreasonable" based on our definition in *Citizens Committee,* and is also an arbitrary requirement because of the need for "factual support" as discussed in *Commonwealth of Pennsylvania.*

The director also recites the USEPA's consideration of the possible adverse health effects of perc emissions as a reason for continued enforcement of the regulation. However,

the adverse health effect was not the reason the director adopted the regulation, nor had the USEPA concluded its studies on the health effects at the time of the EBR hearing. If the USEPA determines in the future that perc emissions need to be regulated because of the detriment to human health, or need to be regulated for some other reason, this could form the factual foundation for a new perc regulation. Presently, the regulation lacks this factual foundation; therefore, the EBR was correct in finding that Ohio Adm. Code 3745-21-09(AA) is unreasonable.

The director, in adopting and enforcing perc regulations, is also to consider the calculated results and benefits to the people of Ohio. R.C. 3704.03(E)(1). Since the perc regulation now lacks a factual foundation, Ohio Adm. Code 3745-21-09(AA) is unlawful pursuant to R.C. 3704.03(E)(1) because NAAQS for controlling ozone cannot be a condition calculated to result from compliance with the perc regulation. Thus, the regulation is of negligible benefit to Ohio's air quality while placing burdensome requirements on certain dry-cleaning establishments. For this reason, the EBR was also correct in holding that Ohio Adm. Code 3745-21-09(AA) is unlawful.

In reviewing the EBR's order, according to R.C. 3745.06, this court "shall affirm the order complained of in the appeal if it finds, upon consideration of the entire record and such additional evidence as the court has admitted, that the order is supported by reliable, probative and substantial evidence and is in accordance with law." The EBR found that the director's adoption and enforcement of Ohio Adm. Code 3745-21-09(AA) was not based on reliable and probative evidence and, therefore, was unreasonable and unlawful. The EBR's findings

and order to vacate the perc regulation were also in accordance with law.

The appellant director also argues that in *New Boston Coke Corp.* v. *Tyler* (Sept. 4, 1986), Franklin App. No. 85AP-1067, unreported, this court held that regulations promulgated by the director had to be consistent with the Clean Air Act. According to the United States Supreme Court in *Train, supra,* the Clean Air Act allows latitude to each state in enacting air quality rules as long as there is compliance with NAAQS and Section 110 of the Clean Air Act. Thus, as discussed herein, the vacation of Ohio's present perc regulations is not inconsistent with the Clean Air Act, especially when the factual basis for the regulations no longer exists. An important distinction in *New Boston Coke* is that there was a factual foundation for the regulation therein. Furthermore, our decision in *New Boston Coke* is now of little precedential effect because the Ohio Supreme Court vacated the decision due to New Boston Coke Corp.'s lack of standing. See *New Boston Coke Corp.* v. *Tyler* (1987), 32 Ohio St. 3d 216, 513 N.E. 2d 302.

Because the EBR's order is supported by reliable, probative and substantial evidence and is in accordance with law, the appellant director's assignment of error asserting that the board's decision was unlawful, unreasonable and inconsistent with the Clean Air Act is overruled. The order of the Environmental Board of Review is affirmed.

*Order affirmed.*

YOUNG and HOFSTETTER, JJ., concur.

EDWIN T. HOFSTETTER, J., retired, of the Eleventh Appellate District, assigned to active duty under authority of Section 6(C), Article IV, Ohio Constitution.