OPINION
{¶ 1} Appellant, Stark-Tuscarawas-Wayne Joint Solid Waste Management District ("the District") appeals from an order of the Environmental Review Appeals Commission ("ERAC") that affirmed the decision of appellee, Christopher Jones, Director of the Ohio Environmental Protection Agency ("the Director" or "OEPA"), [1] to grant appellee/cross-appellant, Republic Waste Services of Ohio, II, LLC ("Republic"), a permit to install an expansion to Countywide Recycling Disposal Facility, a solid waste landfill that it has owned and operated in East Sparta, Stark County, Ohio since 1995.[2] Because reliable, probative, and substantial evidence supports the order and the order is in accordance with law, we affirm.
 {¶ 2} Much of the factual foundation, procedural background, and applicable law set forth below is derived from our opinion in Club 3000I. We will supplement that information with additional facts, procedural background, and applicable law pertinent to the issues before us in the instant appeal.
 {¶ 3} On February 14, 2001, Republic submitted an application for a permit to install ("PTI") a 170-acre lateral and vertical expansion to its existing 88-acre municipal solid waste landfill. Republic's application and supporting documentation included engineering plans, a groundwater monitoring plan ("groundwater plan"), a report authored by Eagon Associates, a consulting firm commissioned by Republic, entitled "Hydrogeologic Investigation for Countywide Recycling and Disposal Facility Lateral and Vertical Expansion" (the "HGI report"), as well as numerous maps, charts, graphs, tables, *Page 3 
and various other reports. The HGI report included information previously collected by Burgess Niple, Ltd., and Golder Associates, consulting firms involved with the site before it was operated by Republic.
 {¶ 4} Over the more than two-year period Republic's application was pending, representatives from Republic and the OEPA engaged in numerous detailed discussions related to the PTI. Ultimately, the OEPA, on May 21, 2002, issued a final recommendation for approval to the Director. On July 1, 2003, the District appealed the Director's final action to ERAC, setting forth six separate assignments of error. Through these assignments, the District argued that the Director acted unlawfully or unreasonably in issuing the permit: (1) despite evidence that the expansion would compromise the ambient water quality in violation of Ohio Adm. Code 3745-31-05(A)(1); (2) in violation of, or without lawful waiver from, the siting requirements of Ohio Adm. Code 3745-27-07(H)(2), prohibiting a landfill above an unconsolidated aquifer capable of sustaining a yield of 100 gallons per minute; (3) in violation of, and without a lawful waiver from, the siting requirement of Ohio Adm. Code 745-27-07(H)(3) prohibiting the landfill at a location within a five-year time of travel to a public water supply well; (4) without adequately considering the substantial risk of contamination to area aquifers resulting from highly fractured bedrock present beneath the proposed landfill expansion; (5) without adequately investigating and addressing the risk of contamination arising from highly fractured bedrock, pre-existing mines, and oil and gas wells in the area of and beneath the proposed landfill expansion; and (6) where the proposed liner system, materials for fill and sub-base, and groundwater monitoring systems are inadequate and are not the best available technology. *Page 4 
 {¶ 5} On March 24, 2004, Republic filed a motion to dismiss the District's appeal for lack of standing. ERAC denied Republic's motion to dismiss on April 21, 2004.
 {¶ 6} ERAC conducted a 19-day de novo hearing over five months between October 2004 and February 2005, during which the parties presented extensive documentary and testimonial evidence. At the conclusion of the hearing, Republic orally renewed its motion to dismiss the District's appeal for lack of standing. On April 6, 2005, ERAC denied Republic's oral motion to dismiss and noted that it would address the standing issue in its final order.
 {¶ 7} On December 26, 2006, the District filed a "Motion To Suspend Proceedings And To Remand Proceedings" ("motion to remand") on grounds that ongoing problems at the existing landfill site, including extensive leachate buildup, increased temperatures, and movement in the waste mass had compromised the integrity of the landfill liner under the vertical expansion area, thus rendering invalid the factual foundation supporting the Director's issuance of the expansion PTI. The District requested that ERAC remand the case to the Director for further consideration of these issues and their impact on the issuance of the PTI. The Director and Republic each opposed the motion in writing. ERAC heard oral arguments on the motion February 23, 2007.
 {¶ 8} Thereafter, on June 27, 2007, ERAC issued its "Findings of Fact, Conclusions of Law and Final Order and Ruling On Motion to Suspend Proceedings and to Remand Proceedings." In its order, ERAC affirmed the Director's issuance of the PTI. In addition, ERAC denied the District's post-hearing motion to remand, finding that the District had not established a sufficient nexus between the existing compliance issues at the landfill and the Director's decision to issue the expansion PTI. In addition, ERAC, in a *Page 5 
footnote, summarily denied Republic's motion to dismiss the District's appeal on the basis of standing.
 {¶ 9} On July 26, 2007, the District filed a notice of appeal pursuant to R.C. 3745.06. The District raises a single assignment of error, in the instant appeal, as follows:
 Whether the Environmental Appeal Review Commission's [sic] ("ERAC") June 27, 2007 order is supported by reliable, probative and substantial evidence and is in accordance with law.
 {¶ 10} On August 3, 2007, Republic filed a notice of cross-appeal pursuant to R.C. 3745.06. In its brief, Republic advances a single cross-assignment of error, in the instant appeal, as follows:
 The Environmental Review Appeals Commission erred as a matter of law in denying cross-appellant's motion to dismiss the Stark-Tuscarawas-Wayne Joint Solid Waste Management District for lack of standing.
 {¶ 11} Initially, we must address the District's motion to dismiss Republic's cross-appeal. "Where a statute confers the right of appeal, an appeal may be perfected only in the manner prescribed by statute."Camper Care, Inc. v. Forest River, Inc., 10th Dist. No. 08AP-146,2008-Ohio-3300, ¶ 8. R.C. 3745.06 confers the right to appeal ERAC orders and provides the procedures for perfecting such appeals. In pertinent part, R.C. 3745.06 provides:
 Any party adversely affected by an order of the environmental review appeals commission may appeal to the court of appeals of Franklin County, or, if the appeal arises from an alleged violation of a law or regulation, to the court of appeals of the district in which the violation was alleged to have occurred. Any party desiring to so appeal shall file with the commission a notice of appeal designating the order appealed. A copy of the notice also shall be filed by the appellant with the court, and a copy shall be sent by certified *Page 6 
mail to the director of environmental protection unless the director is the party appealing the order. Such notices shall be filed and mailed within thirty days after the date upon which the appellant received notice from the commission by certified mail of the making of the order appealed. No appeal bond shall be required to make an appeal effective.
 {¶ 12} As noted above, ERAC issued its final order on June 27, 2007. The District filed its notice of appeal on July 26, 2007 — one day shy of the 30-day time limit provided in R.C. 3745.06. Republic filed its notice of cross-appeal on August 3, 2007 — outside the 30-day time limit, but only seven days after the District filed its notice of appeal.
 {¶ 13} The District contends that Republic's cross-appeal must be dismissed because it was not filed within the mandatory 30-day time limit set forth in R.C. 3745.06. Republic and the Director counter that the 30-day time limit applies only to the filing of the initial notice of appeal and, since R.C. 3745.06 does not provide a procedure for the filing of cross-appeals, such procedure is governed by App. R. 4(B)(1), which provides that cross-appeals may be filed within ten days of the filing of the initial notice of appeal. The District responds that App. R. 4(B)(1) does not apply because appeals from ERAC orders are governed by R.C. 3745.06 and not by the Ohio Rules of Appellate Procedure. In support of its argument, the District cites App. R. 1(A), which provides that the appellate rules "govern procedure in appeals to court of appeals from the trial courts of record in Ohio." The District maintains that, since ERAC is an administrative agency and not a trial court of record, the appellate rules do not apply to ERAC appeals.
 {¶ 14} The parties concede that no Ohio court has addressed the interplay between the 30-day appeal window set forth in R.C. 3745.06 and the ten-day cross-appeal time frame provided by App. R. 4. However, this court, in Jackson Cty. Environmental Commt. v. Shank (Dec. 10, 1991), 10th Dist. No. 91AP-57, recognized that *Page 7 
R.C. 3745.06 provides only limited guidance on the procedural aspects of an ERAC appeal. There, we stated that the appellate rules do not apply to an appeal under R.C. 3745.06, "at least to the extent that the statute provides the procedure for appeal." Id., citing Wooster Iron Metal Co. v. Whitman (1973), 37 Ohio App.2d 1. Similarly, inCamper Care, a case involving an R.C. 119.12 appeal, we stated that "the appellate rules of procedure could have applicability in administrative appeals `only if R.C. 119.12 fails to address' the issue for which the appellate rule is being evoked." (Emphasis sic.) Id., at ¶ 10, quotingIn re Namey (1995), 103 Ohio App.3d 322. Since R.C. 3745.06 does not provide a procedure for the filing of cross-appeals, Jackson Cty. andCamper Care are instructive in the application of App. R. 4(B)(1) with respect to the filing of cross-appeals.
 {¶ 15} The cases cited by the District do not establish that the 30-day appeal period prescribed by R.C. 3745.06 applies equally to cross-appeals from ERAC orders. In Kimble Clay Limestone v.McAvoy (1979), 59 Ohio St.2d 94, the appellant appealed from an Environmental Board of Review ("EBR") (the predecessor to ERAC) order affirming the Director's denial of a permit to the Tuscarawas County Court of Appeals. The Supreme Court of Ohio held that, since the appeal arose from a permit denial proceeding, and not an enforcement proceeding, the appellant should have brought the appeal in this court pursuant to R.C. 3745.06. The court based its decision on a provision in R.C. 3745.06, which expressly directs aggrieved parties to file EBR appeals in this court unless the ERAC order is based upon "an alleged violation of a law or regulation." Id., at 96-97.
 {¶ 16} Wooster concerned a motion for a stay of execution of an ERAC order from which the appeal was taken pursuant to R.C. 3745.06. This court noted that, if the appellate rules applied, App. R. 7 would require that the relief be sought from the "trial *Page 8 
court" and denied prior to seeking a stay, pending appeal, from this court. Id. Citing App. R. 1, we stated that "the appellate rules are limited in application to appeals from trial courts of record and do not apply to administrative appeals directly to the court of appeals." Id., at 2. We concluded that, since ERAC is an administrative agency created by R.C. 3745.02 rather than a trial court of record, "the appellate rules do not apply to appeals from [ERAC] to the court of appeals pursuant to R.C. 3745.06. Rather, that section controls appeals to the court of appeals from [ERAC]." Id. The court granted the motion for stay in light of the fact that R.C. 3745.06 expressly provides that the court hearing an ERAC appeal "may grant a suspension of the order and fix its terms" in the case of an unjust hardship. Id., at 3.
 {¶ 17} Thus, the courts in both Kimble and Wooster held that the appellate rules did not apply because the provisions the respective parties sought to apply were in direct conflict with R.C. 3745.06. Neither court considered the application of the appellate rules to a procedure not addressed in R.C. 3745.06. In the case of a cross-appeal from an ERAC order, there is no conflict between App. R. 4(B)(1) and R.C. 3745.06. Rather, App. R. 4(B)(1) acts as a necessary supplement to the appellate procedures contained in R.C. 3745.06. Accordingly, the ten-day time frame set forth in App. R. 4(B)(1) applies to Republic's cross-appeal. Any other result could effectively foreclose cross-appeals in ERAC cases, especially where, as here, the party appealing the ERAC order does so at the very cusp of the 30-day deadline set forth in the statute. Initially, Republic was not a "party adversely affected by an [ERAC] order," as ERAC awarded Republic the PTI. But for the filing of the District's appeal, Republic would not have filed a cross-appeal challenging ERAC's determination that the District had standing to appeal the permit issued by the Director. The District filed its appeal one day prior to the 30-day appeal *Page 9 
deadline set forth in R.C. 3745.06. Without the ten-day time frame provided by App. R. 4(B)(1), Republic would not have had sufficient notice or opportunity to prepare and file a notice of cross-appeal prior to the 30-day cutoff. By filing a notice of appeal at the end of the 30-day window, an appellant could virtually foreclose the filing of a cross-appeal in ERAC cases. Applying the ten-day window for cross-appeals provided by App. R. 4(B)(1), we conclude that Republic's cross-appeal was timely. Accordingly, the District's September 28, 2007 motion to dismiss Republic's cross-appeal is dismissed.
 {¶ 18} Having concluded that Republic's cross-appeal is properly before us, we now consider Republic's claim that ERAC erred as a matter of law in denying its motion to dismiss the District for lack of standing. As resolution of the standing issue involves an understanding of the scientific underpinnings and geology of the landfill site, we reiterate here our discussion of those subjects from Club 3000 I. Regarding the underlying science, we stated:
 Groundwater is the water that is found underground and fills the cracks and openings between sand and rock. It is formed when precipitation permeates the soil and moves downward to the water table. Water in the ground is stored in the spaces between rock particles, and, through movement, may eventually be expressed above ground in streams, rivers, lakes, or oceans.
 An aquifer is "a geologic formation, group of formations, or part of a formation that is capable of yielding a significant amount of water to a well or spring." Ohio Adm. Code 745-34-01(D). An aquitard is a rock formation, which acts as a confining unit, and impedes the flow of groundwater from reaching the formations around it. The terms "hydraulically active" or "hydraulic conductivity" refer to a formation's ability to transmit water.
 A fracture is a break in the continuity of a material and is created by pressure. A fracture's ability to transmit water depends upon its size, type, and orientation. Not all fractures, however, are capable of transmitting water; for example, a *Page 10 
fracture may be filled in with a substance or material that prevents transmission. "Fracture flow is water moving along a fracture within a rock, like a conduit. Porosity, or porous flow, is water moving between the grains or matrix of the formation."
Id., at ¶ 19-21, quoting ERAC order at 20-21, fn. 15.
 {¶ 19} As to the site's geology, we averred:
 The landfill rests upon the Clarion Shale, which is a "tight" shale formation with low permeability. Directly below the Clarion Shale is the Putnam Hill formation ("Putnam Hill"), which consists of Brookville No. 4 underclay ("Brookville Clay"), the Brookville No. 4 coal, and the Putnam Hill limestone; these strata are interconnected through fractures and share similar water bearing characteristics. The Putnam Hill is 100 times more permeable than the Clarion Shale. * * * According to Republic, the fractures that exist in the Putnam Hill allow groundwater to flow horizontally beneath the Clarion Shale and above the Brookville Clay. Because the Putnam Hill "daylights" at the sides of the hill upon which the landfill is situated, groundwater flows horizontally through it, where it exists at the hillside as seeps or springs.
 The Putnam Hill was designated as the uppermost aquifer system ("UAS") and the Clarion Shale as its confining unit. To ascertain the hydrogeologic properties of the bedrock underlying the site, slug and packer testing was performed throughout the Clarion Shale, the Putnam Hill, and Brookville Coal No. 4. The results of these tests, which were contained in the HGI report, were interpreted to mean that the Clarion Shale could not be considered part of the UAS because of the hydraulic conductivities it exhibited. It is also significant that the Putnam Hill had been recognized as the UAS by the OEPA prior to Republic's PTI application, as evidenced by a letter drafted by Bowman in 1994.
Id., at ¶ 22-23.
 {¶ 20} In its July 1, 2003 notice of appeal to ERAC, the District alleged that it had standing to appeal the Director's decision pursuant to both R.C. 3745.04 and 3745.07. Republic, on March 24, 2004, moved to dismiss the District's appeal for lack of standing. More specifically, Republic argued that the District had failed to demonstrate, pursuant to *Page 11 
R.C. 3745.04, that the issuance of the PTI affected it, and had likewise failed to demonstrate, pursuant to R.C. 3745.07, that the issuance of the permit aggrieved or adversely affected it. The District responded to Republic's motion in writing. By decision issued April 21, 2004, ERAC denied Republic's motion. ERAC did not provide a detailed explanation of its decision; rather, ERAC stated only that it found Republic's motion to dismiss not well-taken "[a]fter a review of the pleadings, pertinent case law, facts of the instant appeal, and considerable discussion amongst the Commission members." (ERAC April 21, 2004 Ruling on Motion to Dismiss, ERAC No. 795334 Exh. AA.)
 {¶ 21} At the close of evidence in the de novo hearing, Republic orally renewed its motion to dismiss the District's appeal for lack of standing. On March 18, 2005, Republic supplemented its oral motion with a memorandum discussing the legal basis for dismissal. On April 6, 2005, ERAC issued a ruling denying Republic's oral motion to dismiss. ERAC noted that it had reviewed Republic's March 18, 2005 memorandum in support and would address the legal issues regarding standing in its final order. As noted, in its June 27, 2007 order, ERAC summarily denied Republic's motion to dismiss.
 {¶ 22} "Standing is a threshold jurisdiction issue that must be resolved before an appellant may proceed with an appeal to ERAC."Helms v. Koncelik, 10th Dist. No. 08AP-323, 2008-Ohio-5073, ¶ 22, citingNew Boston Coke Corp. v. Tyler (1987), 32 Ohio St.3d 216, 217. The Ohio General Assembly has sanctioned two avenues of appeal to ERAC. The first, R.C. 3745.04(B), permits appeals of actions or inactions by the Director by "[a]ny person who was a party to a proceeding before the director." Interpreting R.C. 3745.04, this court in Cincinnati Gas Elec. Co. v. Whitman (Nov. 19, 1974), 10th Dist. No. 74AP-151, found that the statutory language "party to a proceeding before the director" encompassed "any person affected by the proposed action who appears in *Page 12 
person, or by his attorney, and presents his position, arguments, or contentions orally or in writing, or who offers or examines witnesses or presents evidence tending to show that said proposed rule, amendment or rescission, if adopted or effectuated, will be unreasonable or unlawful." Following Cincinnati Gas Elec, this court developed a two-prong test for determining whether a person is a party under R.C. 3745.04. In addition to appearing before the Director and presenting arguments in writing or otherwise, the person must also be "affected" by the action or proposed action. See Martin v. Schregardus (Sept. 30, 1996), 10th Dist. No. 96APH04-433 ("[e]ven assuming arguendo that appellant appeared before the director, we may not escape the import of the words in Cincinnati Gas, i.e., that a person must be `affected'").
 {¶ 23} The second avenue of appeal, R.C. 3745.07, authorizes appeals by parties "aggrieved or adversely affected" by a decision of the Director where the Director acts without issuing a proposed action. In determining whether a party has been "aggrieved or adversely affected" for purposes of R.C. 3745.07, the principles of traditional standing analysis apply. Johnson's Island Prop. Owners' Assn. v. Schregardus
(June 30, 1997), 10th Dist. No. 96APH10-1330.
 {¶ 24} This court has employed the same analysis in determining whether an appellant has been or will be "affected" under R.C. 3745.04(B) or has been or will be "aggrieved or adversely affected" under R.C. 3745.07. Under either section, the appellant bears the burden of demonstrating that it has standing. Olmsted Falls v. Jones,152 Ohio App.3d 282, 2003-Ohio-1512, ¶ 21. "In order to establish standing, a person must demonstrate that the challenged action has caused or will cause him or her injury in fact, economic or otherwise, and that the interest sought to be protected is within the sphere of interests protected or regulated by the statute in question." Johnson'sIsland, citing *Page 13 Franklin Cty. Regional Solid Waste Mtg. Auth. v. Schregardus (1992),84 Ohio App.3d 591, 599. "The alleged injury must be concrete, rather than abstract or suspected; a party must show he or she has suffered or will suffer a `specific injury, even if slight, from the challenged action or inaction, and that this injury is likely to be redressed if the court invalidates the action or inaction.'" Johnson's Island, quotingState ex rel. Consumers League of Ohio v. Ratchford (1982),8 Ohio App.3d 420, 424. "The alleged injury in fact may be actual and immediate, or threatened." Id., citing State ex rel. Connors v. OhioDept. of Transp. (1982), 8 Ohio App.3d 44, 46-47. "A party who alleges a threatened injury, however, must demonstrate a realistic danger arising from the challenged action." Id., citing Babbitt v. United Farm WorkersNatl. Union (1979), 442 U.S. 289, 298, 99 S.Ct. 2301.
 {¶ 25} At this juncture, a review of this court's pertinent jurisprudence on the issue of standing in ERAC appeals is in order. InMartin, the Director issued a PTI authorizing United Waste Systems to install a new sanitary landfill facility. Martin, who resided in the multi-county solid waste district in which the new landfill was to be located, submitted written letters/comments to the Director and attended public hearings on the issuance of the PTI. Martin appealed the Director's action to the EBR. Following a de novo hearing, the EBR affirmed the Director's order.
 {¶ 26} Martin appealed the EBR's order to this court. Addressing the threshold issue of standing, we acknowledged that Martin had appeared before the Director by submitting written comments. However, we noted that the only possible connection Martin had with the proposed action was that she resided in the solid waste district, approximately 20 miles from the site. We further noted that Martin provided no evidence, nor did she call witnesses to testify, as to how she was or would be affected or aggrieved *Page 14 
by the issuance of the PTI. We also noted that she testified by deposition that she did not expect the proposed landfill to directly affect her.
 {¶ 27} We also rejected Martin's attempt to gain standing simply by virtue of being a resident of the county in which the landfill was to be constructed. Specifically, we stated that "a general interest as a citizen does not convert an individual right into a right which would permit any citizen who suffers no distinct harm to sue a governmental agency. It is not unreasonable to require [Martin] to demonstrate, at a minimum, that she is within the sphere of impact for the actions in question." (Citations omitted.) Id., citing Lujan v. Defenders ofWildlife (1992), 504 U.S. 555, 112 S.Ct. 2130. We held that, because Martin failed to demonstrate how she was or would be affected by the grant of the PTI, she lacked standing to bring the action. Accordingly, we concluded that, absent standing, we had no jurisdiction under which we could proceed. Id.
 {¶ 28} In Olmsted Falls, the city of Cleveland ("Cleveland") submitted a permit application to the Army Corps of Engineers ("ACOE") for a permit under Section 404 of the Clean Water Act for authorization to discharge dredged or fill materials into waters of the United States during an expansion project of Cleveland Hopkins International Airport. Cleveland also submitted an application to the OEPA for certification pursuant to Section 401 of the Clean Water Act. The Director of the OEPA informed the ACOE by letter that he was waiving the state of Ohio's authority to act on Cleveland's request for Section 401 certification process.
 {¶ 29} The city of Olmsted Falls ("Olmsted Falls") appealed the Director's waiver to ERAC. After ERAC granted Cleveland's motion to intervene, Cleveland and the Director filed several motions to dismiss. At the hearing on the motions to dismiss, the parties submitted the following five stipulated facts to ERAC: (1) Cleveland owned and operated *Page 15 
the airport, (2) Olmsted Falls is located approximately 2.2 miles from the airport, (3) Cleveland submitted its application for Section 401 certification, (4) OEPA issued a public hearing notice on Cleveland's 401 certification request, and (5) OEPA issued a letter to the ACOE. The parties also submitted the Director's letter to the ACOE, the public hearing notice, and a copy of the ACOE guidelines for Section 404 permits.
 {¶ 30} Olmsted Falls filed a motion for summary judgment, claiming that the Director's waiver was unlawful. ERAC denied the motions to dismiss and granted Olmsted Falls' motion for summary judgment. In its ruling, ERAC stated that it reached its decision on the five stipulations of fact, the Director's letter to the ACOE, and the public hearing notice. ERAC also stated that it determined that Olmsted Falls had standing from a consideration of the stipulated facts.
 {¶ 31} Cleveland and the Director appealed from ERAC's order, arguing, inter alia, that Olmsted Falls lacked standing to appeal the Director's action to ERAC. We agreed, holding that ERAC erred in denying the motions to dismiss. This court noted that the Director stated in his letter to the ACOE that the project would impact 87.75 of the 94 acres of wetlands presently on the property and 7,900 linear feet of Abram Creek and its tributaries. We further noted that the public hearing notice provided that the discharges from the activity would result in degradation to, or lowering of, the water quality of Abram Creek and its tributaries and wetlands. We found that this evidence did not demonstrate how Olmsted Falls would suffer an injury. We acknowledged that the stipulated facts indicated that Olmsted Falls was located 2.2 miles from the airport. However, we concluded that "being a city within close proximity of the airport is not a concrete or specific injury as required to demonstrate standing. Proximity is only a factor when coupled with a threatened or actual injury." Id., at ¶ 29. We found that the evidence *Page 16 
provided only that the land and water would be affected, but did not demonstrate the effect on Olmsted Falls. Id. We also rejected Olmstead Falls' argument that it was affected by the Director's order because it was a city and, as such, had responsibility for providing for public health and safety. We found that "merely being a city does not confer standing without demonstrating the adverse impact or injury resulting from the Director's letter." Id., at ¶ 30.
 {¶ 32} In Johnson's Island, the Johnson's Island Property Owner's Association ("JIPOA") and its individual trustees appealed the Director's issuance of a PTI authorizing Baycliff's Corporation ("Baycliff's") to construct a sanitary sewer system to the EBR. Following a de novo hearing, the EBR vacated the PTI. Baycliff's appealed to this court, arguing, inter alia, that JIPOA lacked standing to appeal the Director's action to the EBR.
 {¶ 33} This court noted that, at the de novo hearing, JIPOA members testified about potential problems associated with the sanitary sewer system: (1) the possible breakage of an eight-inch pressurized line to be laid along the causeway leading to Johnson's Island, (2) the possibility of overflows and odors emanating from the pump stations and manholes created by the construction of the sewer system, (3) possible damage to a historic cemetery for Confederate officers caused by the construction of the sewer system, and (4) the effect the construction could have on the Lake Erie watersnake habitat, which is indigenous to the island. Testimony at the hearing also indicated that some JIPOA members' houses had been shaken by the blasting done in connection with the construction of a portion of the sewer, which was already underway.
 {¶ 34} Upon this evidence, we concluded that JIPOA had standing to appeal the Director's action. More particularly, we stated that "[a]lthough the evidence of actual injury to members of JIPOA, such as their homes being shaken by the construction *Page 17 
blasting, is slight, and some of the threatened injury borders on the overly speculative, the evidence, when viewed in its totality, supports a finding that members of JIPOA have suffered an `injury in fact' for purposes of establishing their standing to bring their claim against [Baycliff's]." Id.
 {¶ 35} In Citizens Against Megafarm Dairy Dev., Inc. v. Dailey, 10th Dist. No. 06AP-836, 2007-Ohio-2649, Hijma Dairy submitted both permit to install and permit to operate applications to the Ohio Department of Agriculture ("ODA") for approval to construct and operate an 825 dairy cow facility. Citizens Against Megafarm Dairy Development, Inc. ("CAMDD") members organized to oppose the dairy's application, fearing the dairy's operations might contaminate the groundwater drawn through their contiguous private wells. The ODA Director issued the requested permits. CAMDD appealed to ERAC, setting forth five separate assignments of error relating to the dairy's alleged violations of ODA's aquifer siting restrictions, ODA's inadequate review of the permits, and the potential for water contamination. Following a de novo hearing, ERAC affirmed the ODA Director's decision.
 {¶ 36} Hijma Dairy challenged CAMDD's standing to appeal from the ODA Director's action to ERAC. We noted that the evidence adduced at the ERAC hearing revealed the following. CAMDD consisted of approximately 20 citizens whose homes were located within one to two miles southeast of the proposed dairy. These citizens used wells to draw groundwater for their personal use. If the dairy released contaminants into the ground, it would take over 45 years for the contaminants to reach the citizens' wells. Acknowledging Hijma Dairy's contention that, through decay and attenuation, the threat of the contaminants would lessen over this time period, we nevertheless concluded that "a realistic, albeit slight, danger remains that the dairy's operations could contaminate *Page 18 
the citizens' wells. Because CAMDD challenges the director's actions regarding the dairy's compliance with the aquifer siting criteria, a statute aimed at protecting the groundwater that the dairy's contiguous citizens' use, CAMDD has standing to appeal this case." Id., at ¶ 8.
 {¶ 37} Republic maintains that the District has not presented any documentary or testimonial evidence establishing that it has been or will be affected or aggrieved by the issuance of the expansion PTI. Republic contends that the District filed its ERAC appeal relying solely on its role as a political subdivision under R.C. 3734.52. Republic maintains that the issuance of the expansion PTI does not negatively impact the District's statutory duties, i.e., planning for solid waste disposal capacity in its geographic area, encouraging solid waste reduction, and promoting recycling. Republic further argues that, although the District's expert witnesses collectively questioned the characterization of the geology surrounding the landfill, siting criteria, and landfill construction and design, none identified a specific negative impact or injury to the District.
 {¶ 38} Republic also contends that the deposition testimony of Stark County Commissioner and District Board Member Richard Regula demonstrates that the District has not been affected or aggrieved by the issuance of the PTI. In particular, Republic cites the following testimony:
 Q: If the Countywide Landfill expansion is approved, what damage is there to the Solid Waste Management District?
 A: It it's approved?
 Q: Yes.
 A: To the district?
 Q: Yes. *Page 19 
 A: I don't believe —
 MR. SEEBERGER: To the district as a geographic body or to the district as a Board of Directors?
 BY MR. PERDION:
 Q: I'm talking about the Solid Waste Management District.
 A: Is there any damage to the district?
 Q: Yes
 A: No.
Regula September 2, 2004 Depo., 66-67; ERAC 795334 Exhibit HHH.
 {¶ 39} Republic further relies upon our averment in Martin, that the general interest of a citizen does not convert an individual right into a right which permits a citizen who suffers no distinct harm to sue a governmental agency. Republic maintains that the District's general concerns about construction of the landfill expansion, including characterization of the geology or the OEPA siting criteria, do not demonstrate an injury, actual or threatened, to the District. Republic further argues that the District's generalized interest in a safe landfill does not convert the District's interest into an injury that confers standing.
 {¶ 40} In response, the District first contends that Republic is precluded by the doctrine of res judicata from relitigating the issue of standing because the Fifth District Court of Appeals has already determined that the District had standing to bring the appeal. Prior to the de novo hearing, Republic wrote to the Ohio Attorney General ("AG") claiming that the District did not have statutory or plan authority to pursue or finance an appeal to ERAC. Republic based its contention upon R.C. 3734.52, which establishes solid waste management districts and creates the two-fold purpose of the districts, i.e., *Page 20 
"preparing, adopting, submitting, and implementing the solid waste management plan for the county or joint district" and "providing for, or causing to be provided for, the safe and sanitary management of solid wastes within all the incorporated and unincorporated territory of the county or joint solid waste management district." Republic asserted that review and contest of OEPA decisions were not functions delegated to the District by statute or authorized by its approved plan.
 {¶ 41} In response to the letter, the District filed a complaint in the Stark County Court of Common Pleas seeking a declaration that it had statutory authority to pursue and finance such an appeal. In its judgment entry, the trial court set forth the issues presented as whether the District had authority to appeal an OEPA permit to install to ERAC and, if so, whether the District had authority to expend funds in furtherance of its appeal. The court found that the District "may appeal" an OEPA decision to ERAC and that the District, with certain limitations, could expend funds in furtherance of the appeal. The court further found that "the issue of standing is within the authority of ERAC."
 {¶ 42} On appeal, the assignments of error raised issues regarding whether the District had "authority" to appeal to ERAC and expend funds in furtherance of such an appeal. Stark-Tuscarawas-Wayne Joint SolidWaste Mgt. Dist. v. Republic Serv. of Ohio II, LLC, 5th Dist. No. 2004-CA-00099, 2004-Ohio-5710, ¶ 7-9. Nonetheless, the appeals court characterized the trial court's decision as finding that the District had "standing" to appeal the OEPA's decision to ERAC. Id., at ¶ 13, 36. Applying the standing analysis applicable to R.C. 3745.04, the court concluded that the District had met the threshold requirements for invoking ERAC's jurisdiction, as it was a party to the proceeding before the Director and had asserted grounds alleging a threat of injury to the District. Id., at ¶ 36. *Page 21 
 {¶ 43} "The doctrine of res judicata provides that `[a] valid, final judgment rendered upon the merits bars all subsequent actions based upon any claim arising out of the transaction or occurrence that was the subject matter of the previous action.'" Clagg v. Clagg, 10th Dist. No. 08AP-570, 2009-Ohio-328, ¶ 13, quoting Grava v. Parkman Twp.,73 Ohio St.3d 379, 1995-Ohio-331, syllabus. "`In Ohio, "[t]he doctrine of res judicata encompasses the two related concepts of claim preclusion * * * and issue preclusion, also known as collateral estoppel."'" Id., at ¶ 14, quoting State ex rel. Davis v. Pub. Emps. Retirement Bd., Slip Opinion No. 2008-Ohio-6254, ¶ 27, quoting O'Nesti v. DeBartolo RealtyCorp., 113 Ohio St.3d 59, 2007-Ohio-1102, ¶ 6. [I]ssue preclusion, [or] collateral estoppel, holds that a fact or a point that was actually and directly at issue in a previous action, and was passed upon and determined by a court of competent jurisdiction, may not be drawn into question in a subsequent action between the same parties or their privies, whether the cause of action in the two actions be identical or different."'" Id., quoting Davis, quoting Ft. Frye Teachers Assn.,OEA/NEA v. State Emp. Relations Bd., 81 Ohio St.3d 392, 395,1998-Ohio-435. "`"While the merger and bar aspects of res judicata have the effect of precluding the relitigation of the same cause of action, the collateral estoppel aspect precludes the relitigation, in a second action, of an issue that had been actually and necessarily litigated and determined in a prior action that was based on a different cause of action."'" (Emphasis sic.) Id., quoting Davis, quoting Ft. Frye TeachersAssn. "`"Collateral estoppel applies when the fact or issue (1) was actually and directly litigated in the prior action, (2) was passed upon and determined by a court of competent jurisdiction, and (3) when the party against whom collateral estoppel is asserted was a party in privity with a party to the prior action."'" Id., at ¶ 15, quotingDavis, at ¶ 28, quoting Thompson v. Wing, 70 Ohio St.3d 176, 183,1994-Ohio-358. *Page 22 
 {¶ 44} In response to the District's res judicata argument, Republic contends that issue preclusion does not apply because the issue of standing was never litigated in the prior action. Specifically, Republic argues that the question of whether the District had standing to appeal the Director's issuance of the expansion PTI was not at issue; rather, the appellate court made that finding in an apparent misunderstanding of the trial court's decision, which expressly left open the standing question for ERAC's determination. According to Republic, issue preclusion is not applicable because it never had a full and fair opportunity to litigate the standing issue.
 {¶ 45} We are persuaded by Republic's arguments on this issue. Although the parties are the same, the underlying issues are not. Republic's letter to the AG asserted that the District was not statutorily authorized, pursuant to R.C. Chapter 3734, to review and contest OEPA decisions. The District sought a judicial declaration that it was statutorily authorized to do so. Neither Republic's letter nor the District's complaint for declaratory judgment raised the issue of standing pursuant to R.C. Chapter 3745. As noted, the trial court expressly refused to address standing, finding it to be within ERAC's authority. Nevertheless, the appellate court addressed standing sua sponte and found that the District had standing to appeal. Under the circumstances, Republic was not provided a full and fair opportunity to litigate the standing issue. Accordingly, the doctrine of res judicata does not apply.
 {¶ 46} As to the merits of the standing issue, the District contends that it will be "affected" or "aggrieved" by issuance of the PTI because expansion of the landfill is at odds with its principal statutory duty set forth in R.C. 3734.52(A), i.e, "providing for * * * the safe and sanitary management of solid wastes within all of the incorporated and unincorporated territory of the * * * district." The District avers that it is statutorily charged *Page 23 
with assuring that solid waste disposal in the district does not harm the District's residents or the environment. The District maintains that testimony from its experts at the de novo hearing established that fractures in the strata beneath the landfill could permit contamination of the underlying aquifer, which is located within the District's territorial jurisdiction.
 {¶ 47} In particular, the District notes that one of the central issues at the hearing was whether the Clarion Shale, located directly beneath the landfill liner, could serve as an adequate isolation distance between the landfill and the uppermost aquifer. In support of its arguments before ERAC, the District offered the testimony of Daniel S. Fisher, an expert qualified in the areas of geology, hydrogeology, geomorphology, hydrogeochemistry, groundwater flow rate analysis calculations, and groundwater flow modeling. Fisher testified that he reviewed the Golder report as well as the HGI report and groundwater monitoring plan submitted by Republic; upon review of these reports, he concluded that the HGI report submitted by Republic in support of the permit was based upon an incorrect conceptual model of groundwater flow. Specifically, Fisher found that the HGI report downplayed or omitted the presence of groundwater in the Clarion Shale and the vertical downward communication of that groundwater between the Clarion Shale and the uppermost aquifer due to fractures. He opined that this fracture network could permit a pathway for water and dissolved contaminants. Fisher opined that the ramifications of the travel of groundwater through the fractures was "critical." (Tr. 896.) He further opined that Eagon's failure to recognize the fractures impaired its analysis and conclusions regarding both the hydrogeologic investigation and groundwater monitoring plan. According to Fisher, this deficiency compromised the validity of the permit application and the concomitant assurance of protection of human health or the *Page 24 
environment. (Tr. 915-16; 923-25). He further testified that mischaracterization of the aquifer system would preclude proper design of the groundwater monitoring plan and monitoring locations, as well as calculation of the travel time of contaminants, which, in turn, would compromise the detection of contaminants from the landfill. (Tr. 897, 908-09, 945.)
 {¶ 48} As additional support, the District cites the testimony of Dr. Darrell I. Leap, an expert qualified in the areas of geology, hydrogeology, fracture tracers, and analysis of fracture terrain. Dr. Leap testified that the HGI report submitted by Republic was inadequate because it did not address existing bedrock fractures and was deficient regarding the travel velocity of water through the subterranean areas below the landfill. (Tr. 1189-91.) Dr. Leap further testified that fractures in the bedrock beneath a landfill are significant because they can be conduits for contamination from the landfill into the environment, including public water supply wells. (Tr. 1204, 1210.)
 {¶ 49} Upon review of the District's evidence and this court's prior decisions, we conclude that the District has established that it has standing to appeal to ERAC. The District presented expert testimony that fractures beneath the landfill provide a pathway for contaminants to the aquifer and that Republic's investigation regarding these fractures was insufficient to assure compliance with pertinent Ohio Administrative Code regulations. Such evidence demonstrates that there is a real potential that the expansion will endanger the District's residents and environment and consequently compromise the District's statutory duty to ensure the safe and sanitary management of solid waste within the District.
 {¶ 50} As in Johnson's Island, the District has provided evidence of threatened injury to the District's residents and environment which, when viewed in its totality, *Page 25 
supports a finding that the District has or will suffer an "injury in fact" for purposes of establishing its standing to appeal to ERAC. We also find Citizens Against MegaFarm Dairy persuasive. As here, the concern in that case was possible contamination of the water supply. We concluded that, although the threat of contamination to the citizens' wells was slight, the danger was nonetheless realistic. Here, both Fisher and Dr. Leap testified that groundwater contamination was a realistic possibility via the interconnection of fractured bedrock beneath the landfill. As noted, Fisher deemed the consequences of the travel of groundwater through the fractures to be "critical." Further, as in Citizens, the District challenged the Director's action regarding compliance with the aquifer siting criteria and the Director's investigation and consideration of the risk of groundwater contamination resulting from the fractured bedrock beneath the landfill expansion.
 {¶ 51} Further, we agree with the District's contention thatMartin is inapposite. Unlike Martin, the District presented expert testimony regarding the potential problems with the expansion. In addition, the District's interest is distinguishable from that of an ordinary citizen with a general interest in a safe environment because it is statutorily charged with ensuring the safety of the residents and environment within the District.
 {¶ 52} We also find Olmsted Falls unpersuasive. While the city of Olmstead Falls was only within "close proximity" of the expansion project in that case, the expansion project here is located within the geographic territory of the District. Further, the city of Olmsted Falls raised only generic arguments regarding its responsibility for providing for public health and safety. Here, the District cites its specific statutory duty under R.C. 3734.52(A) to provide for the safe and sanitary management of solid waste within the District. *Page 26 
 {¶ 53} We also reject as unreasonable Republic's contention that the cited portion of Regula's deposition testimony is conclusive on the issue of whether the District has been or will be damaged by the issuance of the expansion permit. In addition to the testimony upon which Republic relies, Regula testified that, in voting to appeal the Director's decision to ERAC, he relied on information provided by the District's experts that expansion of the facility presented a threat of contamination to the groundwater within the District. He also testified that he agreed with the District's interrogatory responses asserting that the expansion could result in a reduction in the surrounding land values, stench from the landfill, and pollution. Depo. 36-37. He further testified that he was concerned about liner ruptures and aquifer contamination. Depo. 38-39.
 {¶ 54} Further, the exchange between counsel for Republic and Regula is unclear at best. Indeed, counsel did not clarify whether the question of damage related to the District as a geographic body or the District as a board of Directors. Without clarification on this point, it is unclear whether Regula's answer related to the board or the geographic area. Accordingly, we find it is unreasonable to conclude that Regula's uncertain testimony regarding damage to the District negates his testimony that the District's experts provided information that granting the permit posed a threat of contamination to the groundwater within the District and that he himself was concerned about liner ruptures and aquifer contamination.
 {¶ 55} For all the above reasons, we conclude that ERAC did not err as a matter of law in concluding that the District established that it had standing to appeal the Director's final action to ERAC. Accordingly, Republic's cross-assignment of error is overruled.
 {¶ 56} Having concluded that the District has standing to appeal, we turn now to the merits of that appeal. Initially, we note that the District's assignment of error, *Page 27 
"[w]hether the Environmental Appeal Review Commission's [sic] ("ERAC") June 27, 2007 order is supported by reliable, probative and substantial evidence and is in accordance with law" technically presents an issue, not a claim of error. However, we construe the assignment of error as claiming that ERAC's determination is not supported by reliable, probative, and substantial evidence and is not in accordance with law. See Carter-Jones Lumber Co. v. Denune (1999), 132 Ohio App.3d 430, 432
(finding that, although an appellant's brief failed to contain a statement of assignments of error, the error assigned from the trial court's judgment was readily discernible from appellant's statement of issues).
 {¶ 57} R.C. 3745.05 sets forth the standard ERAC must employ when reviewing a final action of the Director. That statute provides, in relevant part that, "[i]f, upon completion of the hearing, the commission finds that the action appealed from was lawful and reasonable, it shall make a written order affirming the action, or if the commission finds that the action was unreasonable or unlawful, it shall make a written order vacating or modifying the action appealed from." This standard does not permit ERAC to substitute its judgment for that of the Director as to factual issues. CECOS Internatl., Inc. v.Shank (1992), 79 Ohio App.3d 1, 6. The term "unlawful" means "that which is not in accordance with law," and the term "unreasonable" means "that which is not in accordance with reason, or that which has no factual foundation." Citizens Committee to Preserve Lake Logan v. Williams
(1977), 56 Ohio App.2d 61, 70. "It is only where [ERAC] can properly find from the evidence that there is no valid factual foundation for the Director's action that such action can be found to be unreasonable. Accordingly, the ultimate factual issue to be determined by [ERAC] upon the De novo hearing is whether there is a valid factual foundation for the Director's action and not whether the Director's *Page 28 
action is the best or most appropriate action, nor whether the board would have taken the same action." Id.
 {¶ 58} R.C. 3745.06 provides the standard this court must employ when reviewing a final order of ERAC. That statute provides, as pertinent here, that "[t]he court shall affirm the order complained of in the appeal if it finds, upon consideration of the entire record and such additional evidence as the court has admitted, that the order is supported by reliable, probative, and substantial evidence and is in accordance with law. In the absence of such a finding, it shall reverse, vacate, or modify the order or make such other ruling as is supported by reliable, probative, and substantial evidence and is in accordance with law."
 {¶ 59} In Tube City Olympic of Ohio, Inc. v. Jones, 10th Dist. No. 03AP-295, 2004-Ohio-1464, this court discussed the terms "reliable," "probative," and "substantial." "`Reliable evidence is evidence which can be trusted. In order for evidence to be reliable, there must be a reasonable probability that it is true. Probative evidence is evidence which tends to prove the issue in question, while substantial evidence is evidence which carries weight, or evidence which has importance or value.'" Id., at ¶ 25, quoting City of Perrysburg v. Schregardus (Nov. 13, 2001), 10th Dist. No. 00AP-1403.
 {¶ 60} In determining whether ERAC's decision is supported by the requisite quantum of evidence, we must weigh and evaluate the credibility of the evidence presented to ERAC. Id., at ¶ 26, citingPerrysburg. This process involves a consideration of the evidence and, to a limited extent, would permit a substitution of judgment by the reviewing court. Id., citing Perrysburg. However, we must bear in mind that the General Assembly created administrative bodies to facilitate certain areas of the law by placing the administration of those areas before boards or commissions composed of individuals who *Page 29 
possess special expertise. Club 3000 I, at ¶ 29, citing Pons v. OhioState Med. Bd. (1993), 66 Ohio St.3d 619, paragraph one the syllabus. Accordingly, this court must afford due deference to ERAC's interpretation of rules and regulations, as well as its resolution of evidentiary conflicts. Id.
 {¶ 61} In the first of two issues set forth in its assignment of error, the District contends that ongoing problems with the landfill liner at the existing portion of the Countywide facility invalidate the factual foundation for the Director's issuance of the expansion permit. In particular, the District maintains that extensive leachate buildup, increased temperatures, and movement in the waste mass has compromised the integrity of the landfill liner under the vertical expansion area. The District contends that, since the factual foundation underlying the Director's determination was eliminated, ERAC's finding that the Director's determination was lawful and reasonable is no longer supported by reliable, probative, and substantial evidence. Republic and the OEPA contend that the District's argument relates to operational and compliance issues pertaining to the existing portion of the landfill, which have no bearing on the Director's issuance of the expansion PTI.
 {¶ 62} In support of its claim, the District seeks to introduce "newly discovered evidence" that purportedly could not with reasonable diligence have been discovered prior to the ERAC hearing. R.C. 3745.06
provides that "[i]n hearing the appeal, the [appellate] court is confined to the record as certified to it by the commission. The court may grant a request for the admission of additional evidence when satisfied that such additional evidence is newly discovered and could not with reasonable diligence have been ascertained prior to the hearing before the commission." *Page 30 
 {¶ 63} As noted, the ERAC hearing concluded in February 2005 and ERAC issued its order on June 27, 2007. The District appears to want to amend the record to include an order from the Director dated March 28, 2007, in which the Director determined that a chemical reaction involving aluminum waste disposal was producing elevated temperatures, resulting in a continuing subsurface fire at the landfill. In its order, ERAC references a March 2007 order from the Director. Thus, it appears that ERAC considered the Director's March 2007 order before issuing its June 27, 2007 final order. Even assuming, arguendo, that ERAC failed to consider the March 2007 order, the District fails to provide reasoning why it could not with reasonable diligence have discovered this order prior to ERAC's issuance of its decision. Accordingly, we cannot conclude that the March 2007 order was newly discovered evidence that could not with reasonable diligence have been discovered prior to ERAC's issuance of its June 27, 2007 final order.
 {¶ 64} The District also seeks to introduce an October 1, 2007 letter from the Director to Republic. That letter stated that the subsurface fire was migrating throughout the original 88 acres of the landfill and possibly into Cell 7, which is part of the horizontal expansion area; accordingly, the Director ordered Republic to construct a firebreak between Cells 8A (which is adjacent to Cell 7) and 8B and to cease disposal at Cell 8A after October 15, 2007. This letter was not issued until after ERAC issued its decision. Accordingly, this evidence is not "newly discovered." See Northfield Park Assoc. v. Ohio State RacingComm., 10th Dist. No. 05AP-749, 2006-Ohio-3446, ¶ 59 (construing R.C. 119.12 and stating that "[n]ewly discovered evidence is evidence that was in existence at the time of the administrative hearing" and that "[n]ewly discovered evidence does not refer to newly created evidence");CVS/Pharmacy #3131 v. Ohio State Bd. of Pharmacy, 8th Dist. No. 82215, 2003-Ohio-3806, ¶ 36 (construing R.C. 119.12 and stating that *Page 31 
"[n]ewly discovered evidence refers to that in existence at the time of the administrative hearing but which was incapable of discovery by due diligence").
 {¶ 65} The District also seeks to supplement the record with an OEPA citation issued to Republic in February 2008. This evidence does not appear to be "newly discovered"; rather, it appears to be "newly created." Even if this court could consider this additional evidence, the District's arguments related thereto are untenable. As noted above, this court's review is limited to whether sufficient evidence supports ERAC's conclusion that the Director's decision to issue the expansion permit was reasonable and lawful. See Citizens Against Megafarm DairyDev., at ¶ 22.
 {¶ 66} This court has recognized that there is a difference between a permit to install and the ongoing regulation, maintenance and operation of a facility. Little Miami, Inc. v. Williams (Dec. 23, 1976), 10th Dist. No. 76AP-292. There, this court reversed an EBR decision vacating the Director's issuance of a permit to install a package sewer treatment facility. In so doing, we agreed with the applicant that EBR improperly took into account the Director's consideration of the operation and maintenance of the proposed sewage treatment plant and the Director's ability to enforce permits. Id. We clarified that a permitting decision based upon the submission of plans by an applicant is different from the "actual operation" of the approved facility:
 The determination upon application for a permit to install is based upon whether the plan proposes a plant that is capable of being operated in accordance with environmental regulations and applicable statutes. Before an applicant may begin construction, he must submit and have approved details of such plans. The actual operation of such plant is distinct and separate.
Id. *Page 32 
 {¶ 67} As this court has stated, issues related to the operation of a facility are pertinent at the permitting stage only to the extent the issues relate to whether the plans submitted by an applicant propose a facility that can be operated in accordance with the applicable laws. Id. Concerns about the actual operation and maintenance of a facility are the subject of corrective measures or enforcement by the OEPA. Id. The District contends that the post-permitting conditions at the existing portion of the landfill constitute "permit issues" because "the regulations clearly require an applicant to ensure that the landfill can be operated in accordance with operational criteria such as maintaining the integrity of the landfill liner." However, the District does not argue that Republic failed to submit an expansion plan that proposed a facility capable of being operated in accordance with the applicable liner requirements. Nor has the District challenged ERAC's conclusion that it was "reasonable and lawful for the Director to have determined that Republic satisfied various construction requirements relating to berm construction and landfill liner design and construction." (ERAC Order, 98, at ¶ 94.) Rather, the District's contentions pertain to Republic's purported failure to ensure that it has maintained the integrity of the landfill liner in the existing portion of the facility.
 {¶ 68} In concluding that the District's issuance of the expansion permit was both reasonable and lawful, ERAC found that the District, in its December 26, 2006 motion to remand, raised concerns about the operation of the existing portion of the landfill, but failed to link those concerns with the proposed expansion of the facility. (ERAC Order, 97, at ¶ 91-92.) Specifically, ERAC stated that:
 Moreover, the Commission finds that neither the Village nor the District scientifically quantified or substantiated the entirety of their claims. Appellants believe that, on their face, the changes at the landfill are substantial enough to alter the basis upon which the Director issued the expansion PTI to *Page 33 
Republic. Even if we were to find that the Director should have known or anticipated these future events at Republic's existing facility, the Commission notes that Appellants' allegations in the post-hearing matters fail to demonstrate a scientifically valid link tying the conditions at the existing portion of the facility to the expansion PTI.
 Indeed, even Appellants note the inherent difficulty in scientifically quantifying their concerns and identifying how these concerns would impact Republic's proposed expansion. The Village argued that the "circumstances . . . have so fundamentally physically altered and changed, that it is clear that the facts upon which the application to construct had been filed must now be reevaluated by the Director" and that the "essential facts necessary to understand and possibly resolve this issue are not known by Bolivar, the Director, or Countywide." Though it offered significantly more data and affidavits to support its contention that the Director's action was based on an invalid factual foundation, the District too, ultimately, noted that the expansion should not be authorized because the affects of the current conditions upon the horizontal expansion are unknown. Absent such a link between the current conditions at the existing landfill and the proposed expansion, Appellants' concerns remain operational in nature and relate exclusively to the on-going regulation of an existing facility for which an operational license is reviewed annually.
(Footnote omitted; ERAC Order, 97, at ¶ 91-92.)
 {¶ 69} Thus, ERAC concluded that the District had failed to demonstrate how operational issues regarding the existing portion of the facility were related to the issues presented in the Director's decision to issue the expansion permit. The District argues that ERAC improperly shifted the burden of ensuring regulation compliance from Republic to the District. However, the District confuses the concept of "burden of proof with "burden of proceeding." The "burden of proof" relates to the burden placed upon an applicant to prove its entitlement to the requested permit. Columbus Franklin Cty. Metro. Park Dist. v.Shank (June 27, 1991), 10th Dist. No. 90AP-516. In contrast, the "burden of proceeding" relates to the burden placed upon a non-applicant party who *Page 34 
challenges the Director's decision to issue a permit. Id. (stating that "an appellant who challenges the Director's decision regarding the issuance or denial of a permit has an initial burden of proceeding to establish a prima facie case before the applicant's burden to prove entitlement to the permit arises"). See also Sutton v. Schregardus
(1994), 94 Ohio App.3d 213.
 {¶ 70} Here, rather than improperly shifting the burden, ERAC simply provided its rationale for finding that the District's contention lacked merit. A review of ERAC's decision as a whole does not suggest that ERAC improperly shifted the burden of proof to the District. Furthermore, to the extent that the Director's granting of the permit was debatable, ERAC had a duty to affirm the Director's decision, rather than substitute its own judgment. See Citizens Committee to Preserve LakeLogan, at 69-70 (stating that "[w]here the evidence demonstrates that it is reasonably debatable as to whether the permit should be granted, [ERAC's] duty is to affirm the Director, rather than merely to substitute its judgment for his. If [ERAC] properly determines the action of the Director to be unreasonable or unlawful, it then possesses power similar to that of the Director, by way of vacating or modifying the action of the Director to implement the appropriate action in accordance with the evidence.").
 {¶ 71} The District further claims that ERAC incorrectly limited its determination that the Director possessed a valid factual foundation to issue the expansion permit to information available to the Director instead of determining the matter with information that had been made available to ERAC. We disagree. ERAC expressly found that it was "not confined to the record certified by the Director, but may consider additional evidence properly presented to it." (ERAC Order, 93, at ¶ 72.) Implementing this standard, ERAC considered evidence that was not available to the Director, including "affidavits and *Page 35 
journal articles" submitted by the District which "describ[ed] the alleged conditions currently existing at the Countywide site and predict[ed] what affects these conditions will have on the existing site." (ERAC Order, 94, at ¶ 75.) In its Findings of Fact, ERAC meticulously set forth the parties' arguments, as well as the contents of the affidavits offered in support thereof. (ERAC Order, 73-77, at ¶ 257-79.) As noted, ERAC heard oral arguments on the matter. In addition, ERAC noted in its order that it conducted a site visit of the Countywide facility on June 22, 2006, during which it toured the existing operations and observed construction of the expansion area. (ERAC Order, at 3.)
 {¶ 72} In support of its claim that the factual foundation underlying the Director's determination was eliminated, the District relies upon two cases from this court in which we held that the OEPA Director's decision was invalid because the factual foundation for that decision no longer existed. In Swan Super Cleaners, Inc. v. Tyler (1988),48 Ohio App.3d 215, this court affirmed an EBR order finding that the Director's adoption of a rule regulating the emission of perchloroethylene ("perc") from dry cleaning operations was unreasonable and unlawful. The Director's basis for adopting the regulation was a policy statement from the United States Environmental Protection Agency ("USEPA") concerning perc emissions and their negative impact on the ozone. However, after the Director adopted the rule, the USEPA revised its policy statement, indicating that perc emissions do not contribute to the degradation of air quality standards. Id., at 216-17. This court concluded that EBR correctly found that the Director no longer had a valid foundation for the perc regulations, as the sole basis for the regulation had been revoked by the USEPA. Id., at 221.
 {¶ 73} In C.F./Water v. Schregardus (Oct. 28, 1999), 10th Dist. No. 98AP-1481, we affirmed an ERAC order reversing the Director's issuance of a PTI for a new solid *Page 36 
waste disposal facility. The Director's decision to issue the PTI was based upon a determination that there were no hydraulically active fractures beneath the proposed landfill capable of transmitting groundwater from the landfill to a productive aquifer located beneath the proposed landfill. On appeal, ERAC heard evidence demonstrating that, before issuing the PTI, the Director possessed evidence that hydraulically active fractures existed beneath the proposed landfill site, but did not review this evidence when deciding whether to issue the PTI. Id. Because the Director did not consider all evidence available to him at the time of his decision, and because evidence presented at the de novo hearing before ERAC established that, had the Director considered this information, his decision would have been different, ERAC found the Director's decision to be unreasonable and remanded the case to the Director for further review. We affirmed, finding reliable, probative, and substantial evidence to support ERAC's decision. Citing Swan Super Cleaners, we noted that "[i]f the factual basis for a particular decision is found to be invalid or no longer exists, then the action of the Director stemming from that invalid basis may be invalid." Id.
 {¶ 74} Contrary to the District's assertions, the current operational and compliance issues arising at the landfill do not invalidate the factual foundation for the Director's decision to issue the expansion PTI. Our decisions in Swan Super Cleaners and C.F./Water were predicated upon factors that are not present in the instant case. First, in those cases, the evidence that arose and was presented after the Director's determination was undisputed. In C.F./Water, all parties acknowledged that the overlooked evidence proved the existence of fractures beneath the landfill and, in Swan Super Cleaners, the parties agreed by joint stipulation that the USEPA amended its policy statement after the Director adopted the rule. In this case, ERAC noted that significant *Page 37 
factual disputes exist as to the validity of the District's assertions and the relationship between the current operational and compliance issues at the landfill and the Director's decision to issue the expansion.
 {¶ 75} Further, in both Swan Super Cleaners and C.F./Water, there was a clear relationship between the newly presented evidence and the Director's action. In C.F./ Water, the existence of hydraulically active fractures beneath the landfill was an issue throughout the permitting process, and all parties acknowledged that, had the Director been aware that fractures existed, the PTI would not have been issued. Here, ERAC did not hear any evidence that OEPA personnel failed to consider elevated temperature readings at the existing portion of the facility, nor did it hear testimony or have presented to it any other testimony that such a review of the elevated temperatures would have altered the factual basis for the Director's decision to grant the expansion permit. In Swan Super Cleaners, the USEPA policy statement on perc was "the sole technical foundation supporting Ohio EPA's regulation of emissions of perc." Id., at 216. Here, whether or not Republic had maintained the integrity of the landfill liner under the existing portion of the facility was not the basis for the Director's decision to issue the expansion permit, much less the sole basis for the Director's action. We further note that ERAC carefully considered the District's contentions regarding the applicability of C.F./Water, but found it distinguishable from the instant case. (ERAC Order, 95, at ¶ 77-90.) Because the factors determinative of the outcomes in Swan Super Cleaners andC.F./Water are not present in this case, ERAC correctly determined that the District failed to present sufficient evidence establishing a prima facie case linking the operational conditions at the existing portion of the facility with any requirement for obtaining the expansion permit. Accordingly, the first issue raised in the District's assignment of error is without merit. *Page 38 
 {¶ 76} The District also questions the validity of the factual foundation underlying the Director's determination that Republic complied with Ohio Adm. Code 3745-27-07(H)(2)(e), requiring a 15-foot isolation distance between the bottom of the landfill liner and the uppermost aquifer system. In particular, the District contends that Republic did not properly determine the existence of vertical fractures in the Clarion Shale, which, according to Republic, acts as the confining unit for the uppermost aquifer system. This court thoroughly addressed this issue in Club 3000 I, and concluded that reliable, probative, and substantial evidence supported ERAC's determination that the evidence supported the Director's determination that Republic adequately characterized the geology and hydrogeology of the site, and, thus, its application met the requirements set forth in, inter alia, Ohio Adm. Code 3745-27-07(H)(2)(e). See Club 3000 I, at ¶ 30-37. Accordingly, we need not address the District's claims regarding this issue.
 {¶ 77} For the foregoing reasons, we overrule the District's single assignment of error and, accordingly, affirm the order of the Environmental Review Appeals Commission.
Order affirmed.
TYACK, J., concurs.
McGRATH, J., concurs separately.
[1] Chris Korleski is the current Director of the Ohio Environmental Protection Agency.
[2] This court originally dismissed the District's appeal for lack of subject-matter jurisdiction. Club 3000 v. Jones, 10th Dist. No. 07AP-593, 2008-Ohio-5058 ("Club 3000 I"). We granted the District's application for reconsideration and therein resolved to consider the assignments of error presented in the original briefs and at oral argument. Club 3000 v. Jones (Jan. 22, 2009), 10th Dist. No. 07AP-593, memorandum decision.